JANVIER, Judge.
Edgar Fortson Kemp, plaintiff, sustained serious painful'injuries in the very early morning of August 8, 1946, when he was struck by an automobile close to the Canal Street neutral ground near the corner of Marais Street in New Orleans. The automobile was a taxicab, owned and driven by Homer F. Donnes.
Kemp alleges that Independent Cab Operators Association, pursuant to the requirements of Ordinance No. 13825 C.C.S., had deposited bonds and securities in lieu of a liability insurance policy, and that the taxicab of Donnes was specifically included among those “covered by said deposit” of bonds and securities.
In addition to this allegation concerning the alleged deposit of bonds and securities by said Association, plaintiff, in a supple *384 mental petition avers that in the operation of the said cab, Donnes, as owner, and the said Independent Cab Operators Association were engaged in a joint adventure or undertaking; that the accident was caused by negligence on the part of Donnes and that therefore both because of the deposit and because of the said joint adventure, Donnes and the said Association are soli-darily liable to him for such injuries and losses as he has sustained.
The Board of Administrators of the Charity Hospital at New Orleans intervened, alleging that certain services and treatments had been rendered to Kemp at the said Charity Hospital and that if there was any liability in defendants, or either of them, there should be judgment in favor of the said Board of Administrators for the value of the said services, to wit, $151.75, with attorney’s fees, interest and costs.
Defendants deny that there was any joint adventure between them, and especially deny that the accident resulted from negligence on the part of Donnes and aver that it was caused solely by negligence • on the part of Kemp, himself, and defendants aver that in the alternative that it should appear that Donnes was negligent in any way, the proximate cause of the accident was not the negligence of Donnes but was the .contributory negligence of Kemp, himself, in the following particulars:
“1. Dashing across a busy thoroughfare in the path of approaching traffic.
“2. Failing to keep a lookout for approaching vehicles.
“3. Running across the street in total and wanton disregard of the approaching traffic.”
From a judgment in favor of both defendants dismissing the suit, plaintiff has appealed.
Kemp resided in Shreveport, La., and at the time of the accident had, for several days, been a guest at the Jung Hotel in New Orleans. This hotel is located on the uptown, lake corner of Canal and Marais Streets. Canal Street is a very wide thoroughfare in the center of which there is an extremely wide neutral ground on which there are located street-car tracks. On the neutral ground between the tracks and between the outside track on each side and the edge of the neutral ground there are wide spaces for pedestrians, especially for those boarding and alighting from streetcars. There are two wide paved surfaces for automobiles, one on each side of the neutral ground.
The night was clear. Plaintiff, in an effort to return to the hotel from other places nearer the so-called business center of New Orleans, had boarded a street-car from which he had alighted on the neutral ground on the river side of the Marais Street crossing. He states that there was a large crowd of people in the car; that quite a number of them alighted at that corner, and that in order to avoid the congestion, instead of crossing in an uptown direction to the side of Canal Street on which the hotel was located, he crossed to the lower sidewalk so that he might wait there until the crowd should disperse and then cross to the upper side, and thus reach his hotel. He says that he was crossing back from the lower sidewalk to the neutral ground when he was struck by the taxicab which was on its way out Canal Street, going in the direction of Lake Pontchartrain. Pie also says that as he stepped from the sidewalk, he looked to his left and saw cars coming and that “there were some of them abreast”; which seemed to be “approximately at the end of the block from where I was standing.” Later he fixed this distance at about 300 feet. He says that he looked again and that they had proceeded “somewhat closer to me”, but “not very much closer.”
Pie then became a little confused in his statements and said that when he looked the second time the cars were about 40 feet away from him. A careful analysis of his testimony on this point convinces us that he intended to say that as he looked this second time the cars had advanced about 40 feet and that they were about 260 feet away from him as he continued in his walk across the street. He says he knew that if they continued at a proper speed he could complete the crossing, and that he did not look at them again until he was struck. Shortly before he reached the neutral ground he noticed four lights very near him, indicating that two cars were bearing *385 down upon him, one in the lane nearest the neutral ground and one in the next lane, and he adds that he was struck by one of these cars but added: “I can’t say which one hit me.”
It is contended that the speed of the taxicab was excessive; that its operator was not keeping a careful lookout for pedestrians ; that he should not have been attempting to pass the other car at the corner, and that he was especially at fault in approaching the intersection at the speed at which he was going since his view was obstructed by the other car on his right.
Donnes, the driver of the cab, says that as he approached the Marais Street intersection there was another automobile to his right, “travelling as I was” and that just before he reached the intersection “a man either run or jumped out into the ‘section’ ”. He says that at that time his bumper was about at the door of the other car to his right and that he applied his brakes immediately but that his car struck the plaintiff. He says too that just before applying his brakes his speed was about 20 or 25 miles per hour. He does not know how many other cars there may have been proceeding as his was at that time.
Counsel for plaintiff attempts to convince us that Donnes was negligent on several counts and was operating his cab in violation of the provisions of the City Traffic Ordinance No. 13702, C.C.S. He says that Donnes should not have been attempting to pass the car on his right as the two vehicles were about to enter the street intersection, and he points to paragraph (e) of Section 12 of Article V which provides that “The operator of a vehicle shall not pass at an intersection any other vehicle travelling in the same direction.”
There is nothing in the record which convinces us that Donnes was attempting to pass the other car. Those two cars and probably others had stopped for a traffic semaphore light at Rampart Street, a few city blocks before reaching Marais Street, and when the light at Rampart Street permitted them to proceed, they all did so. When the accident occurred, just before they entered the intersection of Marais Street, the record does not show where any of the cars were except these two; the other of these two being about a half length ahead of the Donnes car. The record does not show that the Donnes car was passing the other one.
Counsel for plaintiff says that in the manner of speed Donnes was not conforming to the ordinance and this makes it necessary that we determine, if we can, just what was the speed at which the Donnes car was being driven.
Donnes says that his speed was about 20 or 25 miles an hour. We are convinced that none of the other so-called eye-witnesses actually saw the Donnes car until after the impact so that their guesses as to its speed before the accident afford no help. However we think that on this point the testimony of John A. Lopez must be given great weight. He is the official brake inspector of the City of New Orleans. He stated that, .under the conditions then prevalent, if a car such as that operated by Donnes should skid 28 feet after the application of its brakes, he is convinced from various tests that at the time of the application of the brakes it must have been running at a speed of 27½ miles per hour. In spite of much dispute, the record convinces us that the skid marks indicated that the car had skidded 28 feet. As a result, we conclude that the speed of the Donnes car was somewhere between 25 and 30 miles an hour when its brakes were applied. Counsel for plaintiff says that this speed was excessive and he calls attention to Section 3 of Article V of the traffic ordinance and says that such a speed in excess of 15 miles an hour is violative of two provisions of that section.
He points first to one of the provisions to the effect that no vehicle shall exceed a speed of “Fifteen miles an hour except on Boulevards or Through streets, when approaching within fifty feet of and in traversing an intersection when the operator’s view is obstructed. * * * ”
This paragraph further provides that “An operator’s view shall be deemed to be obstructed when at any time during the last fifty feet of his approach to such intersection, he does not have a clear and uninterrupted view of such intersection and of the *386 traffic upon all of the streets entering such intersection for a distance of one hundred feet from such intersection.”
Counsel says that the view of Donnes was obstructed because of the other car to his right.
We note at once the exception in favor of vehicles on boulevards and through streets and we note also that Canal Street is a boulevard within the contemplation of the ordinance because we see in Article I, among the various definitions of terms used in the ordinance, that a boulevard is “any street or avenue with a neutral ground or parkway in its center and a roadway to either side thereof.”
In the second place, we think it very certain that the obstruction to the view of the operator which is contemplated by that paragraph is that which results from a building, a wall, a fence cr seme other similar object and is not such a temporary moving obstruction as that which is sometimes presented when one vehicle is being operated alongside another.
Counsel says that for another reason Donnes should have reduced his speed to not more than 15 miles an hour, and he points to another paragraph of this section which he says requires that, in a business district, no vehicle shall be operated at a speed in excess of 15 miles per hour. That .paragraph provides that a vhicle must not be operated at more than “fifteen miles on all other streets in a business district as defined herein.”
It is true that the scene of the accident was within a business district. A business district is defined as “any street length between intersections where fifty percent or more of the frontage is in use for business purposes * *
We think that counsel has not properly analyzed the entire section 3 of this Article V of the ordinance, and that a proper analysis will show that excepted from this provision limiting speed to 15 miles an hour “on all other streets in a business district * * *” are vehicles on boulevards and through streets, and we say this because in the same section there is a later paragraph which provides that vehicles may be operated at “thirty miles an hour upon any boulevard or through street.” It is true that this 30 mile speed on boulevards and through streets is made subject to the provisions of the first six paragraphs of this Section (b) but the paragraph on which counsel relies and which fixes the speed at not more than 15 miles an hour “on all other streets in a business district” is not one of these six. A reading of the complete section therefore leads to the conclusion that on boulevards and through streets the restriction of 15 miles an hour “on all other streets in a business district” has no application, and that therefore there is in the ordinance no requirement that at that point an automobile should not be operated at more than 15 miles an hour.
If we are wrong in our interpretation of the speed provisions of the ordinance — and we readily concede that these various provisions are quite confusing —still we think that the speed of the car was not a causative factor in the occurrence. It is well settled that even where there is a technical violation of such provision, liability does not result unless it appears that the violation was responsible to some extent for the ensuing accident. In McCormick & Co. v. Cauley, 168 So. 783, 785, we said: “ * * * if plaintiff’s driver violated the ordinance in the matter of speed, that violation was purely technical and was not a factor which contributed in causing the ensuing accident, * *
To the same effect see Henderson v. Percy, La.App., 159 So. 357. We have the same view here. If the speed of the Don-nes car was in excess of the limit fixed in the ordinance — and we repeat that we do not think that it was — this slight excess had nothing to do with the occurrence.
In the first place, we have experienced much difficulty in attempting to understand the reasons, if in fact any existed, for Kemp’s peculiar course, if, as a matter of fact, his course, after alighting from the street-car, was as he describes it. He says that when he got out of the street-car there were 30 or 40 people there, and that therefore in order to avoid this crowd he crossed all the way over to the lower side of Canal Street before turning and recrossing the *387 entire street to the Jung Hotel. The neutral ground of Canal Street is extremely wide. One hundred or more persons could be accommodated there without causing any extreme congestion, and it is hard to believe that under such circumstances he did what he says he did. It is suggested, though there is little or nothing in the record to show it, that he may have become confused and started across the lower side of Canal Street before realizing that he was going in the wrong direction, and that he may then have turned, while in the driveway, and found himself directly in front of the approaching cab.
Even if he did cross completely to the lower sidewalk and did attempt to recross the traffic lane as he says he did, it is evident that while doing so he was hidden from the view of Donnes until just a second or so before he was struck. The other car was between him and the cab and he was doing an extremely dangerous thing in walking out into the street when the cars were as near to him as they obviously were.
It is, of course, true that in spite of this, under the doctrine announced in Rottman v. Beverly, 183 La. 947, 165 So. 153 and extended in Jackson v. Cook, 189 La. 860, 181 So. 195, and discussed in Jones v. American Mut. Liability Ins. Co., La.App., 189 So. 169; his imprudence, or, to use a better term, his extreme recklessness would not necessarily deprive him of his right to recover if Donnes either saw him in time to avoid him or should have seen him. Still we find nothing to indicate that Donnes should have seen him because, as we have already said, it is clear that he was hidden from Donnes by the intervening car, and if he was so hidden, then we do not think that the fact that Donnes was driving his car at a speed slightly in excess of the ordinance, if he was doing so, had anything to do with the accident. It is obvious that Kemp stepped out from in front of the first car directly into the path of Donnes’ car and only a second or two before that car struck him.
There is much disagreement over whether or not he was walking in the so-called pedestrian lane. Even if we assume that he was in that lane, still we are of the opinion that there was nothing to indicate to Donnes that there was danger that a pedestrian might be crossing in front of on-coming traffic.
But beyond all this we find it very difficult to determine just what happened — just where plaintiff was walking and just what he did immediately preceding the occurrence. He, himself, says that he cannot even say which car struck him. A plaintiff must make his case certain. Here he has completely failed to do so. On the record before us we cannot say that the judgment rendered below is incorrect. Of course it is therefore not necessary that we consider the question presented by the contention that the two defendants were engaged in a joint enterprise. We find no liability in either under the circumstances shown here.
The judgment appealed from is affirmed at the cost of appellant.
Affirmed.