CAVANAUGH, Judge.
This appeal is from a judgment rejecting the plaintiff’s demands for personal injuries, pain and suffering, medical expenses and damage to her automobile which was being driven by her on February 7, 1953, and involved in an intersectional collision at Moss and Mahlon Streets in the City of DeRidder with an automobile owned by Van B. Vander and being operated by Ernest D. Burrows, and on which the defendant carried the public liability and property damage insurance.
Moss Street runs north and south, and the paved portion is 24.3 feet north of the intersection and 19.4 feet south of the intersection, Mahlon Street runs east and west, and the paved portion is 24.7 feet wide on each side of the intersection.
The plaintiff alleges the following acts of negligence committed by the defendant:
(a) Driving in a reckless and careless manner and not having his automobile under proper control.
(b) Not maintaining proper lookout.
(c) Failure to exercise ordinary care.
(d) Driving at excessive rate of speed.
(e) Defendant failed to accord plaintiff right of way after she had preempted the intersection and nearly completed the crossing.
The defendant, after a general denial, alleged that the accident, collision and resultant damages occurred solely, exclusively and proximately as a result of the gross negligence and carelessness of the plaintiff, particularly, but not exclusively, in the following respects:
(1) In failing to keep a proper lookout for other motor vehicles approaching arid entering the intersection where the accident occurred.
(2) In failing to keep her motor vehicle under proper control so that she could stop or take other action upon the entrance of another vehicle into the intersection.
(3) In driving at a speed which was excessive under the traffic and other conditions then existing.
(4) In failing and refusing to recognize the right of way conferred upon the driver of the Vander vehicle, the said right of way being conferred upon the Vander vehicle under the following:
(a) LSA-R.S. 32:237, subd. A, which reads:
“When two vehicles approach or enter an intersection at approximately the same *885 time the driver approaching from the right shall have the right of way.”
(b) Section 14 of Ordinance 199 of the City of DeRidder, Louisiana, which reads:
“That all vehicles shall have the right of way from the left, but they must give the right of way for those approaching from the right”.
(5) In driving her car into said intersection before she had determined that she could cross intersecting street safely without obstructing traffic proceeding along intersecting street.
(6) In driving her car into said intersection before coming to a full stop and properly anticipating that it was safe for her to enter the said intersection.
In the alternative, defendant pled that in the event the driver of the Vander vehicle should be found guilty of any action of negligence, then it averred that plaintiff was guilty of contributory negligence proximately causing the accident, which contributory negligence consisted of the particulars set forth in the acts of negli-; gence set forth in Paragraph 19 of its answer, which were averred as the acts of negligence committed by plaintiff as precluding recovery. Further answering, it assumed the position of plaintiff in recon-vention and alleged that it was entitled to recover of the plaintiff the sum of $412.63, which it claimed was due as the sum it had to pay to repair defendant’s car, based on a claim of $462.63, less the sum of $50 under the deductible clause in said policy.
Two days were consumed in" the trial of the case, and after the trial was concluded, the case was orally argued and then taken under advisement by the Court and submitted on briefs. The Trial Judge, iñ a lengthy written opinion consisting of eleven typewritten pages, in which the testimony was fully analyzed and the law which the Court considered applicable thereto applied to the facts, rejected plaintiff’s demands and also defendant’s «conventional demand, holding that the accident was caused by the joint negligence of plaintiff and the driver of the automobile insured by defendant.
Plaintiff prosecutes this' appeal and by brief and oral argument in this court contends that the Trial Judge committed manifest error in his analysis of the facts, as well as his application of the law, and particularly contends that the Trial Judge disregarded the testimony of two of plaintiff’s witnesses who saw the accident, who claimed to have been within 150 or 200 feet of the accident when it happened.
Plaintiff was driving her 1947 model Chevrolet two-door sedan automobile south on Moss Street, with her mother, Clara Owen, riding on the front seat and her two children and a cousin in the rear seat. She claims she stopped at the north end of the intersection and looked to her right and left and saw that no motor-vehicle was approaching from the west, but that as she drove into the intersection she saw the Oldsmobile, insured by defendant, up near the brick church on the south side of Mahlon Street and thought she had ample time to traverse the intersection and proceeded though the intersection at a rate of speed of 10 or 15 miles per hour and claims that she had pre-empted the intersection when she was struck by the automobile insured by defendant.
We summarize the pertinent testimony in the case as follows:
The plaintiff testified on direct examination that when she approached the intersection, she stopped because she- -knew it was an intersection, changed gears and pulled off to cross the intersection; that she didn’t see any car at the time she came to the intersection, and that after she looked both ways, she started off, but after she pulled off, she saw a car up by the church, about one-half block away; that she was travelling ten or fifteen miles per hour when the collision occurred, and that the other car was travelling thirty-five or forty miles per hour because she would have had time to get across the intersection if he hadn’t been speeding. She was then presented a diagram of the street in *886 tersection (P-6), and- was asked how far she had travelled in the intersection before she saw the other car, and she stated that she was almost half-way across the intersection when she saw the other car up by the church, and that she knew she had time to get across, and she then marked A on the plat as the point where the front end of her Chevrolet had reached at the time of the collision and X as the point where the impact took place, and B as the point where her car came to rest after the collision, and marked C on the map where the Oldsmobile, which was’ insured by defendant, came to rest after the collision. ‘ Plaintiff claims her car was headed west on Mahlon Street after the collision, and that the. Oldsmobile was headed southeast on Moss Street; and that the dirt knocked from her car was located on the diagram at the X mark.
On cross examination the plaintiff testified that she stopped her car five or ten feet before she reached the intersection, closer to five, and that she could see down Mahlon Street, and that shé saw the car coming, but that she thought she had time to cross the street. That she did not see the truck parked at her right at the intersection, and she was quite positive that no truck was there. That she started ,up ih low gear, and entered the intersection travelling at a speed of five miles per hour, and that she had reached a point almost mid-way of the intersection when the collision occurred. She further' testified that after she' started through the intersection she didn’t -look any more, and didn’t know how fast the other car was travelling, but that he was going faster than she judged; that'-she wasn’t half-way, but about a car length,- into the intersection when the - collision occurred. She later testified that she had almost reached the center of the intersection (the black line) when she first saw the Oldsmobile up near the church, and that the car coming toward her was three or four hundred feet up Mahlon Street when she had reached the black line, -or center of the intersection, and' that it travelled three or four hundred feet while her car was travelling twelve feet.
The witness H. D. White testified that he was near the little church on the south side of Mahlon Street when the .insured automobile passed him and that it was trav-elling at a speed of thirty-five or forty miles per hour, with -its left wheels five or six inches over the center line of the pavement; that he saw the plaintiff stop at the intersection and that the collision occurred when plaintiff had travelled approximately half-way across the intersection. When he was presented with the diagram P-6, he placed the front' end of the plaintiff’s car nearly out of the intersection and then said the point of impact was where the letter Y was marked on the diagram. He could-not account for how the insured automobile . got from the center of the street over to the point where he last stated the cars collided. He stated that the officers arrived at the scene of the accident about eight or ten minutes after he arrived there, and that the automobiles came to rest at the places and in the positions as contended by the plaintiff in the diagram P-6 previously referred to in her testimony. He first testified that he was one hundred fifty feet, more or less, from the intersection when the accident occurred, and later testified when questioned by the Court that he was two hundred or two hundred'fifty feet from Moss Street when the' Oldsmobile passed him, and that the Oldsmobile had its left wheels five' or six inches over ‘the center ridge of the pavement. He was at the plaintiff’s home when the investigator Hornsby obtained a'statement from her, but he denied reading’ the statement or 'advising her to sign it, as testified to by defendant’s witness, Horns-by. The District Judge was not impressed with this witness’ testimony and came to the conclusion that he did not see the accident.
The witness Norris Jackson testified for the plaintiff and. stated that he saw the accident but did- not know what streets it occurred on, but that it occurred 'near the milk dairy. He could not name any buildings or stores situated on any of the streets, but - says that • -he was walking toward the grocery store and that it was on *887 the same side-of the street where the dairy was situated and that the Oldsmobile was to his left and that he was going toward and facing plaintiff’s car.
On cross-examination this witness said that the cars were about to collide when he first saw the Oldsmobile and ■ estimated it at about twenty-five or thirty feet and that it was on its right side of the street and that when the plaintiff stopped he was about one hundred feet from the intersection. He did not remain at the scene of the collision very long, and left there before the officers arrived. He stated that he saw H. D. White there and saw him talking to plaintiff. When questioned by the Court as to where he was when he saw plaintiff stop, he said he was about one hundred feet from the intersection and that he was about fifty feet from the intersection when he saw the Oldsmobile.
The witness Ohras Cooley testified for the defendant and stated that after he received the report of the accident, he proceeded to the scene to make an investigation of it. He testified that the point of impact was in the center of the intersection and when presented with the exhibit P-6, he marked O on this exhibit as. the point of impact and he marked V on the exhibit as the point where the Vander car or the Oldsmobile was situated when he 'arrived at the scene of the accident. He -found that the Vander- car had skidded approximately seven feet and identified the skid marks on the street as that made by the Oldsmobile. He stated that the plaintiff said • she could not see around the blind corner. A panel truck was parked in front of the Fish home on the north side of Mahlon Street and west of Moss Street at the northwest corner of the intersection about eighteen feet from the west edge of Mahlon Street. He stated that plaintiff’s car came to rest facing the southwest corner of the intersection, the front end being two or three feet from the corner and the back end near the center of the intersection. He estimated the speed of plaintiff’s car to be thirty or thirty-five miles per hour from the skid marks.
The witness Burrows, who was driving the Oldsmobile' involved in the accident, placed the point of impact where the letter S is placed on the diagram, which is in the center of this intersection. He testified that he did not see the plaintiff’s car in the intersection until he -had reached a point eight or ten feet from it and that as soon as he saw her car coming in front of him, he applied his brakes and skidded five or six feet; that his view was obstructed by the truck parked on the north side of Mahlon Street, and he says for that reason he could not see -her until she drove into the intersection in front of him. Mrs. Burrows and Mrs. Vander, who‘were riding on the front seat with Burrows, saw plaintiff’s car approaching the intersection and testified that it did not stop; that when they were within twenty-five or forty- feet from the intersection, they saw’ plaintiff’s automobile and that she did not stop at the intersection and that Mr. Burrows applied the brakes when he was only a short distance from the point where the collision occurred.- They both testified that they did not- call his attention to plaintiff’s- approaching car’s not stopping at the intersection.
The telephone- company had dug a ditch and constructed an underground cable about two feet north of the south side of Mahlon Street, and after covering the ditch with the loose dirt, some of it remained along the south side of the black top, and for that reason Burrows claims he was driving in the center of Mahlon Street and not on his right portion of the slab, or the south half of it.
The Trial Judge made this observation in analyzing the plaintiff’s testimony and fully stating his reasons for rejecting her version of how the accident happened:
“Plaintiff’s version was that when she approached Mahlon, Street, she stopped, looked both ways and saw no car, but after she started up her car and had gotten about a car length into the intersection, she did see another car approaching from the west, about half a block away, but she knew she *888 had time to cross, the other car then being about even with the brick church on the South side of Mahlon Street (which was shown by actual measurement to be 264.5 feet from the center of the church to the west line of Moss. Street intersection). Plaintiff was almost or about half way across the intersection, when she saw the other car, then some 264.5 feet or more away, she not being on the West edge of Moss Street. She testified the other car was making 35 to 40 miles per hour and she was making then, five to ten miles per hour. In other words, if her car was a car length out into the Mahlon Street intersection, when she saw the Vander car at least 264.5 feet away, on Mahlon Street, the Vander car had to make 264.5 feet while plaintiff was traveling the remainder of the way across the 24.7 foot Mahlon Street. If she was out into the intersection a car’s length, she was practically half-way across when she saw the other car approaching her, at 35 to 40 miles an hour, 264.5 feet away, and still according to her version, even at 5 miles an hour, she couldn’t clear the remaining 12 or 15 feet before the other car was upon her. In other words, the Vander’s car, traveling at 35 or 40 miles an' hour, had to make 264.5 feet, while, she made, not more than 15 feet at 5 miles a>n hour. Taking her maximum estimate of the Vander car’s speed, 40 miles per hour, and her minimum speed, 5 miles per hour, the Vandor’s car was traveling not more than 8 times faster than she was. Or putting it another way, if the front end of her car was a car’s length into the intersection when she saw the other car 264.5 feet away, the rear of her car was at the north intersection line. She said she was then making a minimum of 5 miles per hour and the Vander’s car was making a maximum of 40 miles per hour. If we take this version as true, she was making 7.3 feet per second and the Vander’s car was making 58.7 feet per second. At that rate, it would have taken her 3.3 seconds to make the 24 feet across the street, when the rear of her car would have reached the south intersection and been in the clear, while it took the Vander’s car 4.5 seconds to reach the west intersection line, at which time the back end of her car would have been over 7 feet south of the south intersection line, although, according to her testimony, her car was struck when it was near or a little ways past the middle of the intersection and these calculations were based upon the most favorable speeds to her, that she estimated she * * * at least once, having said that at the time of the collision she was traveling 10 or 15 miles an hour. If she was, in fact, traveling as much as 10 miles per hour, when she first saw the approaching car, the rear of her car would have been more than 14 feet south of the south intersection line when the front of the Vander’s car reached the west intersection line.
“Obviously, therefore, the Court can’t accept plaintiff’s version of how and why the accident happened. It most certainly could not have happened for the reasons or as she related.
“The truth is, as the Court believes, that if she saw the other car at all, she didn’t see it until as she said * * * she was almost half way across the street and then the car must have been practically upon her, else she would have had time to clear the remaining distance. If she did see the other car, (which the Court doubts) • she erroneously thought she had time to clear the intersection. At page 15 she said, T knew I had time to get across and I started on across
We have carefully studied the testimony and our conclusion is the same as that of the Trial Judge, and we do not believe that plaintiff stopped before she entered the intersection. She first gave a statement to Mr. Hornsby, who was in *889 vestigating the accident for the defendant, in which she stated that she couldn’t see around a blind corner and the Oldsmobile was about 135 feet from the intersection when she first saw it. She stated on the trial of the case that the insured automobile was near the brick church which by •actual measurement showed it to he 264.5 feet. If she was going 5 or 10 miles per hour when she first saw the Oldsmobile 264.5 feet west of the intersection, and she was already one car length inside of .the intersection, she would have made a safe ■exit and the rear end of her car would have been in the clear of the insured car because ■she would have travelled the width of the intersection before the other car could have collided with her.
The plaintiff’s testimony and that of defendant’s witnesses and the physical facts and circumstances showing where the actual impact between the two vehicles took place is conflicting. The physical facts show that the impact took place near the center of the intersection and that the insured car could not have been travelling at an excessive rate of speed because the insured car did not travel over 2 or 3 feet after the impact and plaintiff’s Chevrolet was not turned over or knocked a great deal off its course. It came to rest with the head end about 2½ or 3 feet from the southwest corner of the intersection and the rear end about that same distance from the center of the intersection, and assumed a postition northeast and southwest in the the southwest quadrant of the intersection.
Plaintiff seriously contends here that the the Trial Judge in deciding the case against her has disregarded the testimony of her witnesses, H. D. White and Norris Jackson, who claimed to be eye witnesses to the accident. The witness H. D. White was walking on the south side of Mahlon Street near the brick church which was 264.5 feet by actual measurement from the west side of Moss Street in the intersection. The witness Norris Jackson was walking toward the store in the northeast corner of the intersection and said he was just below the milk dairy. Plaintiff’s P-6 shows the store some distance back from the northeast corner of the intersection, but does not reflect the location of the dairy, but this witness says he was 100 feet from the intersection when it happened. To questions propounded by the Court, he stated that he was 100 feet or a little more when he saw the plaintiff stop, then said he was about 50 feet from the intersection when he saw the insured Oldsmobile. The Trial Judge evidently concluded that this witness could not have seen the approach of the Oldsmobile from the point where he claims he was walking when the accident occurred.
We have carefully analyzed the testimony of these two witnesses, both of them testifying that the automobile insured by the defendant was travelling at a rate of speed of 35 miles per hour or more when they first observed it and each of them placing the Oldsmobile at different places and both of them testifying that they saw the plaintiff stop and drive into the intersection at a rate of speed of 10 to 15 miles per hour. We do not see how or,why plaintiff did not see the on-coming car at the time she claims she stopped. If plaintiff stopped 5 or 10 feet before she got to the intersection and looked and could not see because her view was obstructed by the truck, then her act of stopping did not do any good. If we accept as true her testimony that she started into the intersection at a rate of speed of 5 or 10 miles per hour and after she had gone about one car length, she observed the approaching Oldsmobile coming on the favored street to her right, she did not have the right to assume that she could negotiate a safe passage in front of it, when it was only 25 or 40 feet away. Plaintiff seriously argues that, since she entered the intersection first in point of time, she had a right to proceed across it under normal conditions and would have made a safe passage had it not been for the fact that defendant’s insured Oldsmobile was travelling at an excessive rate of speed. We believe that the Trial Court correctly held that the impact occurred in the center of the intersection, because the testimony of the. officer who investigated the accident is corroborated by the physical evidence on the pavement, in the nature of skid marks which show the *890 Oldsmobile skidded S or 6 feet and did not travel 2 feet after the impact and that plaintiff’s car was not extensively damaged or knocked over as it would have been if the Oldsmobile had been travelling at an excessive rate of speed, because if the Oldsmobile had been travelling at 40 or 50 miles per hour as it entered this intersection when it struck1 plaintiff’s Chevrolet sedán on'the west side about the door, it would have certainly turned it over and done more damage to it other than just to skid the back end around a few feet to make the car be in a position of southwest and northeast when the police officer arrived there.
We do not question the propositions of law put forward by the plaintiff in support of her position that a motor vehicle first entering an intersection has the right to proceed through an intersection prior to a motor vehicle travelling on the right, and subsequently-entering,.but that right also is conditioned on the proposition that before that entry is made, the motorist on the unfavored street has to be certain that the crossing can be made with safety, and. that there is no approaching vehicle on the right travelling on the favored street whose passage through the intersection her entry would impede.
Now, the plaintiff says she was one car length in the intersection when she saw the Oldsmobile approaching from the right, and she accelerated her speed to get out of its way, and claims that she had reached the south side of the intersection when- the impact occurred. There is no doubt in our mind that plaintiff could have stopped her Chevrolet 'at the rate of speed she was travelling when she accelerated her speed to run in front of this on-coming vehicle, which she alleged was 300 feet from the intersection, but which she later testified was at least opposite the brick church which was more than 250 feet from the intersection. The Trial Judge did not believe that she stopped at the intersection, because under her own testimony she would have safely driven through it if the Oldsmobile had been the distance away from the intersection that she claimed it was, even if she discovered its position travelling toward her on Mahlon Street.
It is our. opinion under the facts in this case that the law announced by this court in McMorris v. Webb, La.App., 67 So.2d 146, 149, in which we quoted from Butler v. O’Neal, La.App., 26 So.2d 753, 756, is controlling, here:
“ ‘Pre-emption of an intersection, under the principles established by our jurisprudence, does not mean the prior entry of a vehicle simply by a matter of a few feet, or, in relation to the time element, by a fraction of a second ahead of another vehicle, but, in order to support a charge of negligence, such pre-emption must be construed to mean an entry into an intersection with the opportunity of clearing the same without obstruction of the path of another vehicle under normal and reasonable circumstances and conditions. Where the intersection involves the passage across a favored thoroughfare, an obligation of unusual care and caution upon the driver of vehicles on the less favored thoroughfare should be enforced.’ ”
The same rule was applied in Hardware Mutual Casualty Co. v. Abadie, La.App., 51 So.2d 664, and in Flowers v. Indemnity Insurance Co. of North America, La.App., 42 So.2d 132, 134, wherein we said:
■“Defendant says * * * that the rule in Louisiana is that when two vehicles approach an intersection at right angles, and one of them nearly completes the crossing before the other arrives at the intersection, the one which nearly traverses the intersecting street is entitled to proceed, notwithstanding the fact that the other vehicle has the right of way because it is approaching from the right. Pittman v. Hunter, La.App., 6 So.2d 786 and Id., La.App., 8 So.2d 554; General Exchange Ins. Corp. v. Kean’s, Inc., La.App., 184 So. 410.
“We agree with the defendants’ contention, as far as it goes, but add *891 thereto the condition that such a driver approaching from the left has an obligation to look to his right before entering the intersection, and should only enter the intersection if there is no traffic at such a distance from the intersection as -would suggest to the mind of a reasonably prudent person that the crossing might be undertaken without danger of collision. This obligation was not performed by the transportation company’s driver, for, if he had looked, he could have seen plaintiff’s truck, and would have known that there was not a reasonably safe opportunity to proceed.”
The latest expression on the ^ question was made by our brethren of the Second Circuit in Harris v. Travelers Indemnity Company of Hartford, Connecticut, La.App., 70 So.2d 235.
The plaintiff relies upon the following cases: Hutto v. Arbour, La.App., 4 So.2d 84; Gardiner v. Travelers Indemnity Co., La.App., 11 So.2d 61; Phares v. Courtney, La.App., 27 So.2d 925; Spencer v. Crain, La.App., 53 So.2d 416; Gauthier v. Fogleman, La.App., 50 So.2d 321; and Seamons v. Aetna Casualty & Surety Co., La.App., 62 So.2d 856. We have examined and are familiar with those cases, and on the finding of question of fact by the Trial Court, in which we have concurred, they are not applicable here for the reason that the plaintiff had not pre-empted the intersection under the law, as that term is construed. The plaintiff in this case is in the same position as the defendant was in Thibodaux v. Willet, La.App., 70 So.2d 728, recently decided by us. Under the facts in that case, we rejected the plea of pre-emption of the defendant because he drove his truck in front of plaintiff’s oncoming car when he should have seen it. Under the facts in this case, plaintiff should have maintained an effective lookout and not have driven her car in the path of defendant’s on-coming car when the danger could have been apprehended. Brown v. Hall, La.App., 70 So.2d 199, Miller v. Abshire, La.App., 68 So.2d 143.
Finding no manifest error upon which we feel justified in reversing the judgment of the Lower Court, it is affirmed at the cost of appellant.