76 So.2d 95 (1954)
NATIONAL RETAILERS MUTUAL INSURANCE COMPANY, Plaintiff-Appellant,
v.
Mrs. Lula HARKNESS et al., Defendants-Appellees.
No. 8185.
Court of Appeal of Louisiana, Second Circuit.
October 29, 1954.
Rehearing Denied December 10, 1954.
*96 Ferris & Achee, Shreveport, for appellant.
Campbell & Campbell, Minden, for appellees.
Russell E. Gahagan, Natchitoches, for W. D. Gibson.
HARDY, Judge.
This is a suit by plaintiff insurance company, as subrogee of its insured, against W. D. Gibson, Mrs. Lula Harkness, the owners of two cars involved in an accident, and the Great American Indemnity Company, insurer of Mrs. Harkness, as defendants. After trial there was judgment in favor of plaintiff against Gibson in the sum of $1,535, and further judgment rejecting plaintiff's demands against Mrs. Harkness and her insurer. Appeals were taken both by plaintiff and by the defendant Gibson. The latter has failed to perfect his appeal and the judgment against him has therefore become final. It follows that the only parties before the court on appeal are the plaintiff and Mrs. Harkness and her insurer, the Great American Indemnity Company, against whom plaintiff-appellant prays for judgment in solido in the sum of $1,535.
The suit arises from a three-car automobile collision which occurred at the intersection of East-and-West and Lewisville Streets in the City of Minden, Webster Parish, at about 4:00 o'clock in the afternoon of January 9, 1951. Immediately prior to the collision a 1949 Oldsmobile automobile owned by M. E. Jones and driven and operated by his wife, headed south on Lewisville Street, was halted at the intersection of said street with East-and-West Street, which runs in the direction indicated by the name; a 1948 Pontiac automobile owned and operated by W. D. Gibson was traveling north on Lewisville Street and was approaching the intersection from the south; a 1949 Hudson automobile owned by Mrs. Lula Harkness, widow, and driven by her minor daughter, then 20 years of age, Jo Ann Harkness (now Mrs. Spainhour), was traveling west on East-and-West Street approaching the Lewisville Street intersection. With respect to the physical surroundings the evidence establishes the fact that the southeast corner of the intersection is planted in shrubbery which considerably, though not completely, obstructs the view between westbound traffic on East-and-West Street and southbound traffic on Lewisville Street; that Lewisville Street to the south of the intersection is straight for a distance of approximately five hundred feet before curving to the east; that Lewisville Street approaching the intersection from the south is upgrade for a distance of approximately one hundred feet; that on the concrete surface of Lewisville Street a few feet south of the intersection there was painted in yellow paint in three foot letters the warning, Stop, which, according to the testimony, was visible for a distance of approximately thirty feet to the south thereof, and that on the west side of Lewisville Street, immediately north of the intersection, there was a vertical Stop warning sign.
There is almost no conflict in the testimony of the drivers of the three vehicles who were the only eye witnesses to the accident with the exception of Mr. Gibson's mother, who was a passenger in his car, but, according to a stipulation in the record, was unable to appear at the trial by reason of illness. The court takes this opportunity to observe that it has seldom examined a record in connection with an automobile accident case in which the witnesses have *97 made as sincere and successful attempt to confine themselves to the exact truth in testifying as to their recollection of the facts involved. As a result the facts have been established without any material conflict and with little possibility of dispute or disagreement.
Mrs. Jones testified that she brought her automobile to a stop at or near the above described Stop sign on Lewisville Street at the intersection; that she observed the approach of the Harkness car from the east; that Jo Ann Harkness did not stop as she reached the intersection but slowed down and appeared to change gears; that Jo Ann waved to the witness, who then waited for the Harkness car to proceed across the intersection, intending to make a right turn behind said car and proceed west; that she never did see the Gibson car until it struck the Harkness automobile; that both cars crashed into her automobile, forcing it against the curb and inflicting substantial damage; that the witness could not state with certainty whether Jo Ann Harkness ever looked to her left, that is, south along Lewisville Street, before proceeding to begin the crossing of the intersection.
Miss Harkness testified that she brought her car to a stop (this being a slight but, under the circumstances, unimportant conflict with the testimony of Mrs. Jones) a few feet east of the intersection; that she looked to her right, observed the Jones automobile, occupied by Mrs. Jones, at a stop; that she then looked to her left, and, observing no approaching automobile, slowly began to proceed across the intersection; that she did not see the Gibson automobile until the collision which brought it into contact with the left side of her car; that although she could see for "some distance" down Lewisville Street to the south of the intersection, she had not observed the Gibson automobile; that the collision occurred as her automobile was approximately in the middle of the intersection.
Gibson testified that he was driving at a reasonable rate of speed along Lewisville Street; that when he reached the foot of the upgrade leading to the intersection, and about one hundred feet distant therefrom, he accelerated the speed of his car; that he never did see the Stop warning painted on the surface of Lewisville Street south of the intersection; that he saw the Jones car stopped at the intersection; that he did not see the Harkness car until it suddenly entered the intersection directly in the path of his automobile, at which time he had no opportunity to avoid the collision and only, according to his testimony, was able to get his foot on the brake but not in sufficient time to apply the brake; that the accident happened approximately in the center of the intersection; that he did not remain at the scene of the accident and make detailed observations immediately following the accident since he was occupied in procuring transportation to the hospital for his mother, whom he believed to be seriously injured.
Upon the basis of the above facts two conclusions are immediately apparent; first, that Mrs. Jones was entirely free from negligence, and, second, that Gibson was guilty of negligence which was a proximate cause of the accident. The only question, therefore, which remains for determination is whether Miss Harkness was guilty of any degree of negligence which contributed to the occurrence of the accident and which would accordingly establish a solidary liability in favor of plaintiff and against Mrs. Harkness and her insurer, Great American Indemnity Company.
We note in brief of counsel for defendants the assertion that Miss Harkness "was proceeding on a highly favored street; that traffic crossing at the intersection were required to stop before entering * * *." There is not the slightest evidence in the record that East-and-West Street was a "highly favored street", nor is there indication of any nature that traffic on Lewisville was "required to stop" before entering the intersection. The most that can be said is that the testimony of the Chief of Police indicates that he had caused the Stop signs to be erected on one side and painted on the surface of the street on the other, apparently on his own motion, and, certainly, so far as is reflected by the *98 record, without the authorization of any municipal ordinance or any other legal directive. It may be that counsel was led to make that statement as the result of the finding of the district judge, as shown in his opinion, to the effect that Gibson was guilty of negligence "by failing to stop on Lewisville Street, as he entered the intersection."
In view of the fact that there was no law in force and effect designating East-and-West Street as a right-of-way or favored street, nor requiring traffic approaching the intersection on Lewisville to stop before entering, it cannot be successfully contended that Miss Harkness was driving on a favored street.
Nor can we justify a finding, as did the district judge, that Miss Harkness preempted the intersection. Preemption does not consist solely of a first entry into an intersection. In the instant case there can be no doubt that the Harkness car actually entered the intersection first, for both the point of collision with reference to the street and the point of impact between the cars so indicates. But other factors are essential in order to establish preemption. The interpretation of preemption requires not only the first entrance into an intersection but that such entrance be accompanied by a normal and reasonable opportunity and expectation of clearing such intersection without obstructing the crossing thereof by other vehicles; Harris v. Travelers Indemnity Company, La.App., 70 So.2d 235, and cases cited therein.
It is next necessary to consider the effect of the partial obstruction of view as bearing upon the degree of care imposed upon the driver of the Harkness car with respect to the existence of negligence. We think the general rule is well established to the effect that any obstruction to view requires the exercise of greater than ordinary care and the use of unusual caution. The rule has been briefly paraphrased in the words "the greater the danger the greater the necessity for caution"; Wilson v. Yellow Cab Company, La.App., 64 So.2d 463, 466; Spencer v. Crain, La.App., 53 So.2d 416; Culpepper v. Leonard Truck Lines, 208 La. 1084, 24 So.2d 148; Blashfield Cyclopedia of Automobile Law and Practice, Section 1041, page 369, Volume 2; 5 American Jurisprudence 652, Section 269.
Finally, it is necessary for us to determine, in view of a multitude of legal pronouncements, whether Miss Harkness could and should have seen the approach of the Gibson car before attempting to traverse the intersection. The positive testimony of Miss Harkness is that she looked to her left only once, saw nothing, proceeded to begin the crossing of the intersection, and never did see the Gibson car until it crashed into the left side of her automobile at about the center of the intersection.
In discussing this point counsel for defendants are content to rest upon the obstruction to her view as an effective excuse for the failure of Miss Harkness to see the Gibson car. We do not think the record contains affirmative evidence which would justify this conclusion. As we have above pointed out Miss Harkness testified that she could see some distance to the south down Lewisville Street. In addition photographs, introduced in evidence by stipulation, taken from a point at the intersection clearly evidence the fact that a view of Lewisville Street to the south was unobstructed for the entire distance down to the curve which, as we have noted above, was some five hundred feet.
It is undisputed that Miss Harkness moved into the intersection at a low rate of speed, and she herself testified that she could have stopped instantly if she had perceived the approach of the Gibson car. Certainly she could have observed such approach at a point where she had a clear and unobstructed view to the south and at which point she could have brought her car to a stop. In short, we are convinced that Miss Harkness was guilty of negligence in failing to exercise that degree of caution which was commensurate with the existing condition, and she must be held negligent for her failure to see that which she was legally required to observe. There is no ground for argument on the point *99 that Miss Harkness looked but once to her left, and she did so before actually entering the intersection. In negotiating the crossing of any intersecting street on which there is two-way movement of traffic the danger of interference with approaching traffic first comes from the left and a failure to make proper observation in this direction is unquestionably a convincing element of negligence.
Counsel for defendant urges and cites authority to the point that Miss Harkness had the right to assume that Gibson would stop before entering the intersection. This might have been true if Miss Harkness had been on a right-of-way street and if Gibson had been required by any statute or ordinance to bring his vehicle to a stop before entering, but neither of these conditions is present. Further, we reject the argument in this respect because since Miss Harkness did not see Gibson's car at any time she had no ground for assuming anything in connection with it, and, certainly, she did not rely in the slightest degree on any such assumption. Such an assumption avails nothing on the part of Miss Harkness under the circumstances of the case. Mr. Gibson's failure to heed a stop sign is pertinent only with reference to a consideration of the question of his negligence. As we have first noted, there is no longer any issue as to negligence on the part of Gibson.
Under what appears to us to be the clear and undisputed facts of this case and the application of the appropriate principles of law as set forth in our jurisprudence, the conclusion necessarily follows that the driver of the Harkness car was guilty of negligence which was a proximate and concurrent cause of the accident.
For the reasons assigned the judgment from which appealed is amended to read as follows:
It is ordered, adjudged and decreed that there be judgment in favor of plaintiff, National Retailers Mutual Insurance Company, and against W. Dyson Gibson, Mrs. Lula Harkness and the Great American Indemnity Company, in solido, in the principal sum of $1,535 with interest thereon at the rate of five percent per annum from May 3, 1951, until paid, together with all costs, and as amended, the judgment is affirmed at appellee's cost.