121 So.2d 365 (1960)
STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Plaintiff-Appellee,
v.
F. B. GOULDIN, Defendant-Appellant.
No. 5048.
Court of Appeal of Louisiana, First Circuit.
May 31, 1960.
Plauche & Stockwell, Chas. D. Viccellio, Lake Charles, for appellant.
Russell T. Tritico, Lake Charles, for appellee.
Before TATE, FRUGE, and MILLER, JJ.
MILLER, Judge ad hoc.
Plaintiff, State Farm Mutual Automobile Insurance Company, as the liability insurer of Harvey Arnaud, brings this suit to recover from Mr. F. B. Gouldin $166.36, which it paid to Mr. Arnaud under a collision policy and is now subrogated thereto.
Plaintiff's assured (Arnaud) was driving east on Fifteenth Street in the City of Lake Charles, Louisiana, when he was involved in an intersectional collision with Mr. Gouldin's son, Gordon Gouldin age 17, who was proceeding north on Common Street. The record reveals that the intersection *366 is not regulated by stop signs or signals and is therefore uncontrolled as to both drivers. However the record shows that Fifteenth Street is paved for many blocks both east and west of the intersection whereas Common Street is paved only to the south of the intersection. The evidence is in conflict as to whether Common is a dirt road or a gravel road to the north of the intersection. The record further reveals that the accident occurred at approximately 5:00 P.M. under favorable driving conditions. On the date of the accident traffic on neither street had been assigned a superior right of way by ordinance.
The accident occurred in the southeast quarter of the intersection. The Arnaud vehicle was damaged on its right side from the rear bumper to the right rear door and the Gouldin vehicle suffered damage to its front end. The Arnaud vehicle did not alter its 25 mph speed prior to the point of impact, but the Gouldin vehicle's brakes were applied and skidded for some 10 to 15 feet prior to the accident. Shortly before the Gouldin vehicle's brakes were applied, it had been accelerated to hasten the crossing maneuver across Fifteenth Street.
Four witnesses testified. They were Mr. Arnaud, plaintiff's assured who was driving alone at the time of the accident; Gordon Gouldin, driver of the defendant's automobile; and two of Gouldin's three passengers. The third passenger was in the Armed Forces at the time of the trial and was unavailable to testify.
Mr. Arnaud was following at a distance of approximately 25 yards a vehicle which was proceeding east at the same rate of speed at which the plaintiff was driving. There was another vehicle approaching or traversing the intersection heading west on Fifteenth Street immediately prior to the accident. Mr. Gouldin saw the vehicle traveling west on Fifteenth Street and timed his entry into the intersection so as to cross immediately behind this westbound vehicle. Gordon Gouldin and his passengers never did see Mr. Arnaud's vehicle until after Gouldin had accelerated to cross the intersection and immediately before Gouldin applied his brakes and skidded into the right rear side of Arnaud's vehicle.
As in most cases of this type the witnesses differ in their estimates of the speed at which the various vehicles were being driven. Of course, Gordon Gouldin can have no basis for determining the speed of the Arnaud vehicle because he did not see it until immediately prior to the accident. Mr. Arnaud did observe the Gouldin vehicle when it was approximately a half block from the intersection. At that time, according to Mr. Arnaud's best estimate he was approximately 30 or more feet from the intersection. Since the Gouldin vehicle reached the intersection before Arnaud was able to completely negotiate the intersection, Arnaud was of the opinion that the Gouldin vehicle must have been operated at an excessive rate of speed.
As a result of the impact the Arnaud vehicle was turned 180 degrees and came to rest in the north half of Fifteenth Street immediately east of the intersection and facing west. The Gouldin vehicle came to rest in the northwest part of the intersection partially on the graveled or dirt portion of Common Street and partially on the paved portion of the intersection.
There was some testimony to the effect that there were some oak trees and/or shrubbery on and along the south edge of Fifteenth Street immediately to the west of Common Street. The testimony is not clear and the trial court did not report what was observed at the personal inspection of the site of the accident. However, this Court is left with the impression that this corner cannot be considered a blind corner and that there is no reason to doubt Mr. Arnaud's testimony that he did observe the Gouldin vehicle when it was approximately a half block away from the intersection and when the Arnaud vehicle was *367 a distance of some 30 or more feet away from the intersection.
After a trial on the merits and after viewing the scene of the accident the lower court rendered judgment for oral reasons assigned in favor of State Farm Mutual Automobile Insurance Company as prayed for.
Plaintiff-appellee contends that although the Gouldin vehicle was approaching from the right and therefore was entitled to the statutory right of way, that the Arnaud vehicle had physically pre-empted said intersection before the collision occurred.
Defendant-appellant, on the other hand, denies liability on the basis that the primary cause of the accident was the excessive speed of the Arnaud vehicle; failure of its driver to keep the automobile under control; failure to keep a proper lookout; entering the intersection without determining if he had sufficient time to safely cross same; failing to accord the right of way to a vehicle approaching from the right and alternatively, that the driver was guilty of contributory negligence.
The jurisprudence cited by the defendant-appellant with regard to the preemptive rights of drivers approaching unmarked intersections is well established and is quoted as follows:
"A driver approaching an intersection from the left has an obligation to look to his right before entering the intersection and should only enter the intersection if there is no traffic at such a distance from the intersection as would suggest to the mind of a reasonably prudent person that crossing of the said intersection might be undertaken without danger of collision."
"To `pre-empt' an intersection with an automobile does not necessarily mean to enter the intersection first, since pre-emption does not take place unless the automobile which first entered does so at a normal speed, and after its driver has exercised proper precautions and after it has become evident that it can cross in safety if no other vehicle arrives at an unexpectedly excessive speed." Hardware Mutual Casualty Co. v. Abadie, La. App., 51 So.2d 664; Vernaci v. Columbia Cas. Co., La.App., 71 So.2d 417; Broughton v. Touchstone, La.App., 72 So.2d 552; Webb v. Providence Washington Ins. Co., La.App., 72 So. 2d 883; National Retailers Mutual Ins. Co. v. Harkness, La.App., 76 So. 2d 95; Dodd v. Bass, La.App., 76 So. 2d 572.
From the physical facts it cannot be questioned that the Arnaud vehicle preempted the intersection. At a speed of approximately 25 mph in a 30 mile zone, Mr. Arnaud had almost completely traversed the intersection when Mr. Gouldin had just entered the intersection. While it is true that Mr. Gouldin did skid his brakes prior to striking the Arnaud vehicle, the brakes were applied only 10 to 15 feet prior to the point of impact. It must also be noted that Gouldin admitted that he was accelerating prior to applying his brakes. The location and position of the two vehicles following the accident in large measure support the theory that Gordon Gouldin must have been proceeding at an excessive rate of speed prior to applying his brakes some 10 to 15 feet before striking the Arnaud vehicle at the rear.
We think that counsel for the appellee correctly argued: "It is obvious that Gordon Gouldin never observed the Arnaud vehicle until immediately before the point of impact. Harvey Arnaud had observed the Gouldin vehicle when it was sufficient distance down the block to enable Arnaud to proceed through the intersection. His testimony is uncontradicted that he was right at the intersection when he observed the Gouldin vehicle some distance down the block. Arnaud had every right to believe that he could traverse that intersection safely under normal conditions."
*368 Where the trial judge has seen, heard and observed the witnesses and the many other things that transpire in the courtroom that are not susceptible to be taken down by a stenographer, and has viewed the scene of the accident, his judgment on a question of fact will not be disturbed unless manifestly erroneous. Further, as this court pointed out in Nix v. State Farm Mut. Ins. Co., La.App., 94 So. 2d 457, 459: "* * * The District Court's factual determination that the superior motorist's entry into the intersection did or did not proximately cause the collision concerned must be reviewed by an appellate court in the context of the infinite variations in split-seconds and feet distant involved, depending upon which the relative rights and duties of the parties concerned must be evaluated, and which determinations themselves must be deduced from the data furnished by the necessarily imperfect human observations and recollections of two or three moments of sudden crisis."
We are of the opinion that the lower court's decision is amply supported by the evidence and for that reason the judgment is affirmed.
Affirmed.