ELLIS, Judge.
The plaintiffs filed this suit for damages arising out of an accident which took place on November 25, 1957 at the intersection of East Brookstown Drive and Choctaw Drive in the City of Baton Rouge, Louisiana. East Brookstown Drive extends generally in a northerly and southerly direction, and Choctaw Drive extends generally in an easterly and westerly direction and is approximately 22 feet in width. In the general vicinity of the accident, there is a railroad track which runs parallel to Choctaw about 30 feet south of Choctaw Drive. East Brookstown Drive crosses the railroad track. There is a stop sign facing north bound traffic on East Brookstown Drive approximately 18 feet north of the railroad track and about 12 feet south of the intersection.
On the date of the accident, the northern portion of East Brookstown, that is, the portion of the road which extended north from Choctaw Drive, was gravel. South of Choctaw Drive, East Brookstown Drive was blacktopped. Since the accident and before the date of the trial, East Brooks-town Drive was blacktopped north of the accident scene, also. The accident oc *486 curred at about 4:35 P.M. and the plaintiff was driving north along East Brooks-town Drive in her 1957 Ford automobile with her daughter and granddaughter. The defendant’s insured, a Barber Brothers employee named Wiley Rist, was driving a 1949 Stake body truck in a westerly direction on Choctaw Drive. The speed limit on Choctaw Drive was stipulated to be 40 M.P.H. The investigating officers established that the accident occurred on the north side of Choctaw Drive at a point on the northeast corner of the intersection approximately 16 feet ■ across Choctaw Drive, 4 feet west of the east parallel line of East Brookstown Drive, 6 feet south of the north parallel line of Choctaw Drive, and 16 feet north of the south parallel line of Choctaw Drive.
The impact occurred when the panel truck with a heavy duty "cattle type” front bumper struck the rear portion of the Wilkinson automobile starting at a point at or near the front of the back door and extending back to the rear of the car. After the accident the truck traveled in more or less a southwest direction 16 feet from the point of collision, leaving no visible skid-marks. The Wilkinson vehicle spun around and was facing in a southerly direction, some 44 feet from the point of impact. Although the car spun in a semi-circular pattern, the officers measured in a straight line from the point of impact to where the car came to rest. According to the testimony, plaintiff’s daughter, a Mrs. Pennington, and her child were thrown out in the soft mud near the intersection. The record does not reflect whether or not either one of these guest passengers was injured. Six excellent photographs depicting the area in question were introduced into evidence, and the pictures show that a railroad spur crossed Choctaw Drive just east of the intersection approximately 40 feet from the intersection, at approximately a 45 degree angle. There is an East Baton Rouge Parish Maintenance and Material Warehouse near Choctaw Drive extending some 60 to 70 yards along the northeast portion of the intersection in question.
After a trial on the merits, judgment was rendered in favor of the defendant dismissing plaintiffs’ suit with written reasons assigned. From this judgment, the plaintiffs have timely filed a devolutive appeal to this court.
Plaintiffs have urged the Lower Court committed certain errors, as follows, to-wit:
“Specification of Errors
“I. The trial court erred in failing to find Wiley Rust guilty of negligence proximately causing the accident.
“II. The trial court erred in holding that plaintiff did not preempt the intersection and was contribu-torily negligent.
“HI. The trial court erred in failing to grant judgment for plaintiffs and award damages.”
Plaintiffs’ counsel argues first that the driver of the defendant’s truck failed to keep a proper lookout and did not maintain proper control over his vehicle. They contend that a motorist has a duty to look ahead and observe which never ceases and his failure to see what he should have seen by exercising due care does not absolve him from liability to those injured as a result of his non-observance. Hernandez v. Hood, La.App., 1 Cir., 125 So. 2d 71 (1960); Maher v. New Orleans Linen Supply Company, La.App.Ore., 41 So.2d 101 (1949); McCandless v. Southern Bell Telephone & Telegraph Company, 239 La. 983, 120 So.2d 501 (1960). Although this rule of law is correctly set forth, as well as the cases cited by the plaintiffs, the facts in those cases are widely divergent from those in the case at bar, and the primary question involved in the case at bar is whether the plaintiff was guilty of contributory negligence. In the case of Hernandez v. Hood, supra, the plaintiff was *487 injured when his car was forced against the guard rail of a bridge due to the movement of the defendant’s car to the left as plaintiff was in the process of overtaking it. In the case of Maher v. New Orleans Linen Supply Company, supra, the plaintiff was a pedestrian and was walking forward across a street and in attempting to avoid being struck by one automobile, stepped back into the path of the defendant’s car. In McCandless v. Southern Bell Telephone & Telegraph Company, supra, the plaintiff’s seven year old son, Robert McCandless, was riding a bicycle and the driver of the defendant’s vehicle turned to his left in a southerly direction into North 45th Street in the City of Baton Rouge. In doing so he failed to make the turn into the proper lane of traffic and the truck struck the plaintiff’s son who was attempting to cross North 45th Street from west to east.
None of the facts in these cases cited by counsel for plaintiffs are similar in any aspects to those in the case at bar, and because of their inapplicability, they would not be proper authority upon which to base a judgment in favor of the plaintiff in this case.
Plaintiffs argue that the driver of the defendant’s truck was traveling at an excessive rate of speed and “it has frequently been held that an impact, accompanied by a great amount of force such as revealed by the collision of defendant’s truck with the slow moving Ford belonging to plaintiffs, indicates excessive speed, Baranco v. Cotten, La.App., 1 Cir., 98 So.2d 260, 262 (1957); State Farm Mutual Automobile Ins. Co. v. Gouldin, La.App., 1 Cir., 121 So.2d 365 (1960); Wilson v. Williams, La. App., 1 Cir., 82 So.2d 71 (1955); State Farm Mutual Automobile Insurance Company v. United States Fidelity & Guaranty Company, La.App., 2 Cir., 90 So.2d 534 (1956).”
These cases cited by the plaintiffs do take into account the tremendous force of the impact of the automobiles as a factor in finding that one of the parties in in-tersectional collisions was guilty of excessive speed. However, there were other factors to be taken into consideration, besides the mere fact that the force of the collision was very great. We also point out that in most of the cases cited by plaintiff, the speed limits on the respective streets were approximately 20 M.P.H. each, while in the case at bar we are presented with defendant’s driver proceeding along the right of way street by virtue of a stop sign in an area where the speed limit was 40 M.P.H. In order to pre-empt the intersection, the plaintiffs here would have to take into consideration the fact that automobiles on Choctaw Drive were within the legal speed limit when traveling at 40 Miles per hour. The court cannot consider only the force of the impact of the vehicles but all of the factors present must be taken into consideration.
The trial court has correctly analyzed in detail the testimony and compared it to the speed charts prepared by the Louisiana Driver’s License Bureau and we quote, with the exception of page numbers:
“Mrs. Wilkinson’s testimony indicated that she stopped prior to crossing the railroad track on E. Brookstown, looked both ways, proceeded to and came to a complete stop between the railroad track and the stop sign, and again looked in both directions. Mrs. Wilkinson stated in her deposition that she did not come to a complete stop between the track and Choctaw before entering Choctaw, but Mr. Brumfield pointed out that this was with reference to once she started across Choctaw after having stopped for the stop sign. Mr. Smith said, he was merely trying to show the conflicting statements. While stopped for the stop sign, Mrs. Wilkinson first looked to her right, seeing the truck ‘a considerable distance down there,’ looked to her left and saw a car, then looked back to the right and saw the truck about fifty to seventy-five yards estimated. ‘The truck had come within the length of the warehouse, just had entered the length of that warehouse, but *488 we felt, at the speed I judged it was making that I could cross easily.’ ‘I judged it was making a nominal speed.’ After looking to the right the second time, she started across Choctaw and did not see the truck again until she was hit. She proceeded across Choctaw in low gear, but did not know her speed. She felt perfectly safe until hearing her daughter holler and say, ‘He’s going to strike you,’ and scream just as ‘the front part of the car had cleared the road * * * Choctaw road.’ The front end of her car went off in the rocky section of E. Brookstown Drive. She had no idea that the accident was going to happen until her daughter screamed. She didn’t look around after her daughter’s warning but ‘I just tried to proceed on across there.’
“Wiley Rist testified that he was traveling twenty-five to thirty miled per hour before entering the intersection. The car was entering the eastbound lane of .Choctaw when he first saw it. However, he did testify in his deposition, ‘She was getting over in my lane when I seen them.’ But, nevertheless, when confronted with his statement, he insisted the car was back in the eastbound lane, not in the westbound lane when first seen. Maybe the following clarifies the inconsistency: Q. ‘She was getting in your lane of traffic when you saw her’? A. ‘Beginning to get over.’ He told police officers that the truck was about forty feet from the car when he first noticed there was going to be an accident. Wiley Rist’s deposition relates that he said he was not asked this question by the police, but the police report indicates Rist’s answer as being ‘forty feet.’ Rist described his position when first seeing the car as: When I crossed over that railroad * * * that spur in there.’ Rist further stated that he was on the west side of the spur when first seeing the car. Immediately after seeing the car he applied the brakes, which he claims caught, and continued straight ahead. He claims he was too close to stop or to blow his horn.
“Mrs. Jack Pennington’s testimony substantiates her mother’s for the most part. She further added that before entering Choctaw she first (sic) the truck beyond the warehouse about 75 yards. She estimates that her mother drove across Choctaw at fifteen to twenty miles per hour. Her first impression was that the truck was coming at a normal rate of speed, thirty to forty miles per hour, but that the speed seemed excessive when the truck was seen bearing down on her. The closer it got, the faster she thought it was going. She thought the truck was too close and going too fast to avoid the accident when she first saw the truck bearing down on her and at this time the truck was reportedly two car lengths away while the car was ‘practically out of Choctaw Road. Part of it was in East Brookstown.’ She said, T had time to tell my mother he was going to hit us and scream, but had no time for the car to get out of the way because he was bearing down on us.’
“Ventress Albert testified that he first saw the car on top of the railroad track on E. Brookstown, that it did not stop, but continued straight through at ‘pretty near thirty.’ He yelled, ‘Look out’ when the car entered the eastbound lane of Choctaw, when he realized it was not going to stop for the stop sign. He said the truck was on the west side of the crossing about forty feet from the intersection, when he yelled, ‘Look out.’ His deposition testimony revealed that the truck was seventy-five feet from where the accident happened when he yelled ‘Look out.’ and that the car was in the middle of the road. But, he said Mr. Smith walked the distance and clarified his confusion as to how many feet the truck was away from the intersection when the car was first seen and when he first yelled. He substantiates Rist’s testimony that the truck was going thirty to thirty-five miles per hour, and that Rist attempted to apply the brakes and they held.
“Ralph H. Dickerson, employee of Barber Brothers Company, witnessed the acci *489 dent, first seeing the car when it was abcrat in the middle of the eastbound lane. He was then unable to tell how far the truck was from the car but said it looked like an accident would take place, and it did, in the westbound lane. After the accident he did not observe the vehicles very closely as he first attended to getting the people •to a doctor.
ifc 5}t ifc >{( $
“When the car stopped for the stop sign, that part of it which was hit had to have been about 31 feet from the point of impact, the car’s front end was about 5 feet from Choctaw Road, there only being one and one-half car lengths between the railroad track and Choctaw, the right rear portion being about 10 feet to the rear of the front end, and 16 feet from Choctaw Road was traversed up to the point of impact. Averaging 15 miles per hour it would have taken the damaged section of the car about one and four-tenths seconds to reach the point of impact from the time it started in motion. Mrs. Wilkinson and Mrs. Pennington both testified to the truck’s apparent normal rate of speed and Mrs. Pennington’s impression that the truck was going faster the closer it came seems accountable merely by the fact that the close the truck, the greater its motion would seem. Accepting the truck driver’s report given to the police that the truck’s estimated speed at the moment of the accident was 20 miles per hour and that the truck was traveling at a rate of 30 to 35 miles per hour as indicated by Rist and Ventress Albert, it is likely that the truck approached the car at no more than an average speed of 30 miles per hour, or 44 feet per second, from the time the car entered Choctaw. In one and fourtenths seconds the truck would have traversed a distance of 61/ feet from the time the car entered Choctaw until the collision. A chart issued by the State of Louisiana Drivers License Division approximates that at 30 miles per hour reaction time is such that 33 feet are traversed before braking action is affected, after which a car will traverse 46 feet before coming to a stop. All total, from the time an emergency or peril is spotted until a car is brought to a complete halt from 30 miles per hour, a distance of 79 feet will normally be traveled. The truck, being about 6X1/2 feet from the point of impact when the car started across Choctaw, could not have been brought to a stop within this distance, thus avoiding the collision, even if Wiley Rist had seen the car the moment it started in motion. Therefore, Rist’s failure to see the auto when he should have is not a proximate cause of the accident. * * * Such reconstruction of the accident or events leading up to it are further confirmed by the fact that the car must have been in a position somewhere prior to or in the middle of Choctaw when the truck was reported by Mrs. Pennington to be two car lengths away. Within this two car lengths the truck had to be slowing to its 20 miles per hour at the moment of impact. At an average of 25 miles per hour it would have taken the truck one second to travel this distance. This would place the car about one-third the distance from where it started into Choctaw, or two-thirds the distance from the point of impact, e. g. 22 feet per second at 15 miles per hour being about two-thirds of 31 feet. This is consistent with Mrs. Pennington’s statement that from the time the truck was seen bearing down on her she had time to tell her mother he was going to hit her and scream. If the car was already leaving Choctaw when the truck was reportedly two car lengths away, the truck would have had to be going at a terrific rate of speed to hit the car where it did, as it would have taken the car less than three-tenths of a second to clear Choctaw. The truck would have had to be going at a rate of over 80 miles per hour to cover two car lengths or 37 feet in three-tenths of a second. No where in the testimony is such speed indicated nor can it be inferred irons anything said * *
After a careful analysis of the testimony in this case, and finding no facts that would indicate the defendant was traveling at an excessive rate of speed, we do not believe *490 that the plaintiff had pre-empted the intersection, nor that the reasons found by the lower court for rendering judgment were erroneous. Since we have not found that the lower court’s judgment absolving the defendant of any contributory negligence was in error, the specifications of error on the part of the plaintiff dealing with quantum of damages are moot.
For the reasons hereinabove set forth, the judgment of the Lower Court is affirmed.
All costs of this appeal are taxed to plaintiffs.
Affirmed.