McINNIS, Judge.
This suit arose from an automobile collision that occurred March 25, 1951 on U. S. Highway 71 near what is known as Crossroads, 13 miles north of Coushatta. The petition alleges that plaintiff was driving his 1947 Chevrolet sedan north on U. S. Highway 71 at about 50 miles an hour, on his side of the highway in a prudent and cautious manner, with a clear view ahead when he noticed a Plymouth car, driven by J. R. Lewter, traveling south, 200 yards ahead, making a left turn into a driveway about 150 feet south of Crossroads; he took his foot off the accelerator, checking his speed to allow the Plymouth plenty of time to make the left turn, which it did, and just as plaintiff was abreast of the driveway the Plymouth entered, he saw a 1950 Ford sedan driven by Mrs. Maudis Ferguson enter Highway 71, south of Crossroads, in his path, about 150 feet from his car, and immediately applied his brakes, skidding all four tires, and as there was no approaching traffic meeting him, he pulled to the left in an effort to avoid a collision, but the Ford continued to the west, increasing its speed, and when his car was almost off the road on the left side the front end of the Ford collided with the right front side of his car, knocking it off the shoulder of the road on the west side. He alleges that Mrs. Ferguson was driving the car with the permission of her husband, and on a mission for the community.
He alleges that both knees were injured, and he suffered contusions about the body for which he asks $2,500, medical bills $15, loss of three days time $30 and $445.20 for repairing the damage to his car, including towing charge.
He charges that the negligence of Mrs. Ferguson in the following particulars was the sole and proximate cause of the collision and resulting damage; pulling out on a heavily traveled highway directly in his path, failing to keep a proper lookout and not stopping after creating the emergency.
Defendants filed separate answers, in which the substantial allegations of the petition are denied. Mrs. Ferguson says she had gone to visit a sick friend without the knowledge or consent of her husband, in a car owned by her daughter, and says that before she entered Highway 71 she looked both north and south and saw no traffic approaching from either direction, and she was free of any fault and that the collision was due solely to the negligence of the plaintiff in driving his car in excess of 60 miles an hour, driving on the wrong side of the highway, fading to have his car under proper control and failing to keep proper lookout. And, in the alternative, if she be held guilty of any negligence, that the negligence of plaintiff as set forth, contributed to the happening of the collision and bars any recovery.
She alleges that she sustained personal injuries in the sum of $1,500, made up of $750 for mental anguish and fright and $750 for pain, suffering and disability, and demands that sum in reconvention.
The husband’s answer is practically the same, including the plea of contributory negligence, and in reconvention, he demands $548 for repairs to the car; however, during the trial, evidence of this was objected to because the car was alleged to belong to his daughter, and this reconven-tional demand was dismissed.
After trial on the merits the district judge, assigning oral reasons, rejected the demands of the plaintiff, and the reconven-tional demand of Mrs. Maudis Ferguson.
From this judgment plaintiff only is prosecuting a ' devolutive appeal. Defendants have not appealed nor answered the plaintiff’s appeal, and in brief, ask only that the judgment be affirmed.
*533 The plaintiff had two passengers in his car, one of them a friend of his and the other a soldier he had picked up. The friend, Glen Dawson, died September 5, 1951 and the soldier was transferred to California and he could not be found.
As in most cases such as this, the testimony is conflicting, but the testimony of plaintiff as to distance is the most satisfactory. He returned to the scene the next day and made measurements and a rough drawing of the scene, which is in evidence. The Plymouth car of J. R. Lewter traveling south, turned left into the driveway at the home of his mother, which is situated on the east side of Highway 71, and is 273 feet south of Crossroads. There is a horseshoe driveway at the Lewter home, so that the home can be reached by driving in at either end. The Plymouth car turned in at the south entrance which is nearer the house. The distance between these entrances is 87 feet, and Mrs. Ferguson entered the highway 126 feet south of Crossroads. The paving on the highway is 18 feet wide. South of Crossroads is a small hill the top of which is 300 yards, 900 feet from the driveway the Plymouth turned into.
On the day of the accident the road was dry and the weather clear. As plaintiff came over the hill he saw the Plymouth with the driver’s arm out signaling intention to turn left. He says he was driving 55 to 60 miles an hour at that time, and removed his foot from the accelerator to slow down to give the Plymouth time to make the turn, but did not then apply the brakes. At that time the Ferguson car was standing still in the north entrance of the driveway to the Lewter home, but as soon as the Plymouth turned into the south entrance of the driveway it started entering the highway, and plaintiff having reached a point about opposite the south entrance to the driveway saw the car out on the highway in his path, and in an effort to avoid the collision pulled to the left side of the highway, applied his brakes, and he says, sounded the horn, hoping to pass in front of the car, but he failed in this effort. There is a filling station just north of the driveway that the Ferguson car pulled out of, and the shoulders on both sides of the highway are wide, but plaintiff could not undertake to pass behind the car because of a telephone pole.
Mrs. Ferguson intended to turn to her left to go south toward Coushatta. She and her sister, Mrs. J. E. Woodard, who was in the car with her, say they looked to the north' and south and saw no traffic approaching from either direction at the time she started to enter the highway, and that it was only after she was in the highway that she saw plaintiff’s car, and it was then coming over the crest of the hill, said to be 300 yards to the south, and that it was the excessive speed of plaintiff’s car that caused the collision.
Trooper E. C. Clinton investigated the accident and claims to have made some measurements, including skid marks for 114 feet, from which he concludes plaintiff was driving 70 miles an hour, and he claims he can stop a car going 60 miles an hour in 60 feet braking distance, which is not in line with standards set up in tables used by the courts for a long time, and which fix net braking distance under ideal conditions of a car traveling 60 miles an hour at 141.1 feet. It appears that the trooper was mistaken either in the speed of the car or in measuring the distance required to stop. Of course if plaintiff had been going at a very slow speed he could have stopped before reaching the Ferguson car, but he was not exceeding the speed limit fixed by statute, and even if he had been, unless the violation of the statute is a proximate cause of the accident he will not be held liable.
It is also contended that plaintiff was negligent in undertaking to pass in front of the Ferguson car instead of passing to its rear, however, Mrs. Ferguson created the emergency, and if plaintiff made an error in the measures he took to avoid the collision, he will not be held negligent for that reason.
Considering all of the evidence we reach the conclusion that the negli *534 gence of Mrs. Ferguson in entering tlie highway in the path of plaintiff’s car was the proximate cause of the collision. Drivers of automobiles are held to have seen what they should have seen. Plaintiff’s car was there for her to see. It may be that her opportunity to' see it was obscured by the Plymouth car turning left between the two cars that collided, but if so, she was then in a place of safety where she should have remained until she could see the highway. We are not impressed with her testimony that plaintiff was some 300 yards away when she saw him.
 Although Mr. Ferguson says he had bought the car for his daughter, he had bought the license for it in his name. She was not living at home and he and his wife used the car as if it had been their own. This would not avail Mrs. Ferguson anything anyway because she was driving the car. He seeks further to escape liability because, he says, she was not on any mission for the community. It appears that the holding of our Supreme Court in the case of Brantley v. Clarkson, 217 La. 425, 46 So.2d 614, has destroyed that defense also.
The only item of damage that plaintiff proved is $445.20 for towing the car in and repairing it. His injuries were slight, and the doctor he consulted made no charge. He was employed at a monthly salary and was paid without deduction for the three days he claims he lost, and he admits that he went to the office every day.
For these reasons the judgment appealed from, insofar as it rejects the demand of plaintiff, is annulled and reversed, and it is now ordered, adjudged and decreed that there be jugment in favor of the plaintiff, John W. Shipp, and against the defendants, Lody (Lodie) W. Ferguson and Maudis Ferguson, in the sum of $445.20 with 5% per annum interest from date of judicial demand until paid, and for all costs of this suit in both courts.
In all other respects the judgment is affirmed.