JANVIER, Judge.
The automobile collision from which this suit results took place at about 3:15 o’clock, in the afternoon on August 1, 1952, in New Orleans, at a street intersection, the characteristics of which are so unusual that it must be carefully described if a clear understanding of the occurrence is to be had.
Prior to the construction of the vehicular overpass on Elysian Fields, that avenue for its entire length was a very wide thoroughfare having two roadways with a neutral ground between them. On the upper or west of these roadways, traffic travelled only in a northerly direction, that is, towards the Mississippi River. On the other or lower roadway traffic moved.only in the other direction towards Lake Pontchartrain. When the present overpass was constructed, the north end extended a short distance beyond and across the intersection of Agriculture Street and since the decline of the overpass at that end crossed that street at a height of only a few feet, it was necessary that that street be' cut off on both sides so that Agriculture Street no' longer continued from one side to the other of Elysian Fields. The overpass was wider than the neutral ground had formerly been, so that the roadway on each side of Elysian Fields which remained, was narrower than formerly. The present width of the roadway on which this accident occurred is estimated by various witnesses at from 16 to 18 feet. Thus there is now a wide thoroughfare which goes over the overpass, and parallel to this overpass there is what remains of the original roadways of Elysian Fields.
The accident with which we are now concerned occurred at the intersection of this upper roadway at the point at which Agriculture Street runs into it at a right angle. In - other words, the intersection may be described as a capital T, the cross line at the top representing the roadway of Elysian Fields and the upright line representing Agriculture Street.
Plaintiff, Henry E. Rodriguez, was driving his 1949 Ford Sedan on the roadway of Elysian Fields going towards the Mississippi River and when he reached the intersection of Agriculture Street, his car collided with a truck owned by defendant, G. C. Albright, and operated by defendant, Robert Harrold, who was an employee of Albright and who was operating the truck in the course and scope of his employment.
Rodriguez brought this suit against Har-rold, the driver of the truck, and against Al-bright, praying for judgment against them in the sum of $275.99, of which he alleges $250.99 represents the amount expended for repairing his car, and $25 represents the value of the loss of the use of the car while it was being repaired. He charges that the accident resulted from negligence on the part of Harrold in driving into the intersection w’+hout maintaining a proper lookout, in failing to yield the right of way to plaintiff who was travelling on a through street, “in attempting to travel north on a one-way street for southbound travel,” in attempting to make a left turn without first making certain that it was safe to do so, and in failing to stop before entering a *414 through Street. He alleges that in all of these particulars Harrold violated the provisions of traffic ordinance of the City of New Orleans, No. 18,202, C.C.S.
Defendants, admitting the occurrence of the accident, denied that Harrold was in any way at fault, and charged that the sole cause of the occurrence was the negligence of plaintiff Rodriguez in failing to keep a proper lookout, in failing to have his car under control, in failing to swerve to the left in an effort to avoid the accident, and in driving at an unlawful rate of speed.
Albright then assumed the position of plaintiff in reconvention, and, averring that the repairs to his truck necessitated by the accident had cost $262.28, prayed for judgment dismissing the suit of plaintiff and for judgment in reconvention against Rodriguez in the said amount. Though not required to do so, Rodriguez filed answer to the intervention, making practically the same allegations which he had made in his original petition.
There was judgment in favor of plaintiff and against both defendants in the sum of $250.99 and dismissing the reconventional demand, and both defendants have appealed suspensively. Plaintiff has neither appealed' nor answered the appeal.
The record shows that Harrold, driving the Albright truck, attempted to turn left from Agriculture Street into the upper or west roadway of Efysian Fields. Plaintiff asserts that the roadway was a “one-way street” in the other direction and that this in itself constituted negligence on the part of Harrold.
It is conceded that, before the construction of the overpass, both roadways on Elysian Fields had been one-way streets as are practically all double roadway streets here and elsewhere, and that vehicles on the roadway into which Harrold turned to his left where then required to drive only towards the Mississippi River and that this was true, although on the sides of Elysian Fields there were no signs designating each of those two roadways as a one-way street.
It is conceded by defendants that, after this accident occurred, the Police authorities of New Orleans placed at this corner a “one-way sign”, and that thereafter, as a result, all vehicles on that roadway were required to drive only in the one direction, towards the Mississippi River.
Counsel for defendants maintains, however, that when the overpass was completed with the resulting cutting off of Agriculture Street, the one-way character which had formerly attached to these side roadways of Elysian Fields no longer existed, and that not only was it thereafter customary, but that it was also entirely legal for vehicles entering that roadway from Agriculture Street to turn to the left and, after proceeding one block, to then cross the neutral ground of Elysian Fields just beyond the end of the overpass and to then drive north on the lower roadway. And there is some evidence to this effect. According to this evidence, it was customary for vehicles whose drivers desired to go in a northerly direction to drive just as Harrold was attempting to do, that is, to turn left on that roadway, go one block, and then cross to the other side. However, one of the defendants’ witnesses, John Viola, Jr., seems to have understood the situation just as we view it. He said that before the one-way signs were erected, though it was quite customary for vehicles to, turn left rather than to take the somewhat longer route by turning right and then crossing at the next street and then turning left, he knew that this was a dangerous thing to do. He said:
“Speaking for myself, I always go underneath the overpass.”
When asked why he did this, he said:
“Because I think it’s the right way to go, one way of keeping out of trouble; the other way I’ll be at fault if there’s an accident.”
Counsel for plaintiff then asked him whether he meant that he would'have been at fault in turning to the left before the signs were erected or only since, and he answered :
*415 « * * * i think I would have been at fault if an accident occurred at any time.”
We think that the custom which Harrold was following in tunning to his left was not sanctioned by ordinance, but resulted from the desire of those drivers who established the custom to take the shorter route in the direction in which they desired to go, and we think too that though it was not shown that the city authorities had by ordinance declared that each side of Elysian Fields should be a one-way street and even though no one-way signs had been erected, the one-way character of each side of that street was so obvious that it constituted negligence to drive in the other direction. Furthermore, the evidence convinces us that even if Harrold was not driving the wrong way on a one-way street, it was his negligence in other respects which was the cause of the accident. If there was contributory negligence on the part of plaintiff it could not be relied on by defendants to defeat the right of plaintiff to recover since the answer contains no plea of contributory negligence.
In Hecht v. Toye Bros. Yellow Cab Company, 62 So.2d 520, 522, we said:
“It is now well established that contributory negligence is a special defense which must be pleaded in order for it to be considered, and that the defendants carry .the burden of proving the allegations relied upon by them.”
In Althans v. Toye Bros. Yellow Cab Company, La.App., 191 So. 717, we discussed at length the effect of the failure of a defendant to alternatively plead contributory negligence.
The record shows that the truck of Albright had been parked on the left side of Agriculture Street, probably about 50 feet from the intersection and that Harrold drove it towards the intersection, first crossing to the right side of Agriculture Street, and that when he reached the intersection he turned to his left. He says that in making the turn his speed was about 7 miles an hour and that he looked straight ahead. When asked when he first looked for traffic, he said: “ * * * j i00ked while I was making the turn.” He then said that he “saw a car speeding on to me,” and added: “I put my brakes on when I was in the middle of the intersection.” He says that his truck was hit at about the center of the street.
Rodriguez says that he approached the intersection at a speed of from 20 to 25 miles an hour, that his destination was a block beyond the intersection and that when he was about 15 feet away from the intersection, the truck entered in front of him and turned towards the left, completely blocking the street, that he then applied his brakes but could not stop in time. There is evidence to the effect that there were skid marks extending back from wheels of the Rodriguez car and some witnesses say that these marks extended as far as 38 or 40 feet. Rodriguez says that his car skidded a normal distance for a car travelling 20 or 25 miles per hour.
Thomas C. Meade, who was an employee of the City of New Orleans, as was Rodriguez, says that he was following about 75 feet behind the Rodriguez car and that he saw the accident; that Rodriguez was running at a speed of about 22 or 23 miles per hour and that the truck came into the intersection at a speed of between 10 and 12 miles an hour, and that he did not see it stop before it entered the intersection.
Harrold knew that he was emerging from an unpaved street into a paved thoroughfare. He knew that, even though there may have been established a custom of driving on that thoroughfare in the direction which he desired to take, it was an extremely dangerous thing to do, since the roadway was very narrow. Since there were two roadways on Elysian Fields, he should have realized that most of the traffic using that roadway would have been proceeding towards the Mississippi River and not in the direction taken by him. Before turning into the street he should have made *416 certain that it was safe for him to do so. Had he looked he could easily have seen the Rodriguez car approaching. If that car was being operated at a speed slightly above the limit permitted by law, that fact played no important part in producing the ultimate result. In Kemp v. Donnes, 32 So.2d 383, 386, we said:
“If the speed of the Donnes car was in excess of the limit fixed in the ordinance * * * .this slight excess had nothing to do with the occurrence.”
The most important fact was that Harrold entered the intersection in front of the oncoming car of Rodriguez. That was the cause of the collision.
The judgment appealed from is affirmed at the cost of appellants.
Affirmed.