LANDRY, Judge ad hoc.
Plaintiff, Klein Short, received serious personal injuries on February 7, 1956, when the motorcycle he was driving easterly on Shada Avenue, Baton Rouge, Louisiana, was in collision with a truck owned by the City-Parish Government, City of Baton Rouge-Parish of East Baton Rouge, and being operated by city-parish employee Woodrow Threeton who was proceeding westerly on said Shada Avenue and in the act of making a left turn.
Suit was originally filed against the City of Baton Rouge, the Parish of East Baton Rouge and Manufacturers Casualty Insurance Company, liability insurer of the truck involved in the accident.
Exceptions of no cause and no right of action, founded on the principle of governmental immunity from liability, were filed on behalf of the City of Baton Rouge and the Parish of East Baton Rouge. These exceptions were sustained by the lower court leaving Manufacturers Casualty Insurance Company as the sole remaining defendant.
After trial on the merits, the lower court rendered judgment in favor of defendant and rejected plaintiff’s demand. In his written reasons for judgment, the learned trial judge found as a fact the proximate cause of the accident was plaintiff’s negligence in operating his motorcycle at an excessive rate of speed. From the judgment of the lower court dismissing his action, plaintiff prosecutes this appeal.
The record does not show that plaintiff objected to the action of the lower court dismissing his suit against the City of Baton Rouge and the Parish of East Baton Rouge on the' previously mentioned exceptions. The judgment of the lower court in this regard is not complained of by counsel for plaintiff in either his brief or oral argument before this court, therefore, plaintiff’s demand against said defendants is presumed abandoned.
Plaintiff’s petition alleges that on^ the date of the accident he was riding his motorcycle easterly along Shada Avenue at a lawful rate of speed when a truck owned by the city-parish government and being driven by its employee Threeton, suddenly and without warning or signal, negligently turned left directly across the path of his oncoming vehicle. Plaintiff avers he made every effort to avoid the collision but to no avail. He charges that Threeton was negligent in failing to maintain a proper lookout, failing to see the motorcycle being operated by plaintiff, carelessly and heedlessly driving the truck into the path of plaintiff’s approaching vehicle and failure to accord plaintiff the right of way to which *828 plaintiff was entitled. In the alternative, plaintiff pleads the doctrine of last clear chance.
Defendant’s answer denies Threeton was negligent in any respect whatsoever and charges that the sole proximate cause of the accident was plaintiff’s own negligence in traveling at an excessive rate of speed, failing to maintain a proper lookout, failing to have his motorcycle under proper control and failing to see the truck in time to avoid the collision. Alternatively, defendant pleads that if Threeton, the truck driver, was guilty of any negligence whatsoever, the alleged acts of negligence attributed to plaintiff constitute contributory negligence barring plaintiff’s recovery.
The evidence shows that on the afternoon of the accident at approximately 1:45 P.M., Woodrow Threeton, an employee of the City-Parish Government, accompanied by a co-worker, Walter Dedon, was driving westerly along Shada Avenue in an International dump truck belonging to his employer and used in the collection of trash within the city. His destination was a parking lot situated on the south side of Shada Avenue in approximately the center of the 2400 block and operated by the city-parish government for the servicing, refueling and storage of vehicles. As he approached the entrance to this facility, he observed that the driveway was blocked by the presence of two vehicles, one being refueled with gasoline from storage pumps situated on the premises and the second waiting in line to be refueled. Threeton parked his truck on the extreme right or north edge of Shada Avenue a short distance east of the driveway and in this position waited until the other vehicles were serviced and moved out of his path. He then looked in both directions and observing no oncoming or overtaking traffic commenced slowly to turn left into the driveway of the parking area. When he had almost completed his turn, the right rear wheel of the truck was struck by plaintiff’s motorcycle. At the time of collision, the right rear wheel of the truck was approximately two feet from the south edge of the paved surface of the street. It is undisputed that plaintiff’s motorcycle left skid marks 100 feet before the point of impact and traveled an additional 69 feet before coming to rest in the shallow ditch on the south side of the street. Plaintiff himself was thrown a distance of approximately 20 feet from the point where his motorcycle came to rest. The parties are in disagreement on the issue of whether the skid marks were made by the tires or the crash bar of the motorcycle.
Shada Avenue is a narrow thoroughfare having a black top surface only IS feet wide with shoulders approximately two feet wide on either side thereof. The driveway into which Threeton was turning is approximately 30 feet wide and surfaced with gravel. The evidence shows the presence of loose gravel on Shada Avenue for some distance east and west of the driveway. At the scene of the accident Shada Avenue is level and straight. Approximately 450 feet west of the point of collision there is a rather sharp or precipitous dip or depression in the roadway, the lowest point of which is about 600 feet from the center of the driveway into which the truck was turning. The legal speed limit on Shada Avenue is 25 miles per hour.
Defendant contends that at the moment Threeton looked to the west to observe for oncoming traffic before making his turn, plaintiff was out of sight at or near the lowest point of the dip or depression a distance of some 600 feet away. It is defendant’s position that Threeton, having’ looked and found the road ahead free of oncoming traffic for a distance of a least 450 feet, was not negligent in starting his turn. Plaintiff contends he was at all times visible to a motorist drively westerly and had Threeton been vigilant and alert, he would have seen plaintiff’s oncoming vehicle.
Plaintiff testified he is 22 years old and has had several years experience operating a motorcycle. He stated that on the afternoon of the accident, he was returning *829 from New Orleans where he had visited his grandmother and was en route to the home of his aunt who resides on Shada Avenue approximately one block from the scene of the accident. According to plaintiff, he was traveling at .a speed of approximately 35 miles per hour and when he reached a point about 100 feet from the parked truck, the truck suddenly turned left across his path. He immediately applied his brakes whereupon his motorcycle began to skid or slide and as a protective measure he “laid the motor down”. Plaintiff explained that to “lay the motor down” consists of leaning the vehicle on its side so that it will slide or skid on its crash bar rather than travel upright on its wheels. He further explained this to be a protective measure customarily utilized by motorcycle riders whenever collision is imminent. According to plaintiff, this maneuver prevents the motorcycle from colliding head on and eliminates the greatest source of danger to the rider, namely being thrown head first over the handle bars into the object with which the motorcycle collides. Plaintiff recalled none of the events immediately following the collision.
Woodrow Threeton, driver of the truck, testified he stopped the truck on Shada Avenue and remained parked until the two vehicles being serviced in the parking lot were driven clear of the driveway. He then looked both ways and seeing no traffic approaching from either direction, gave the proper hand signal and drove slowly across the street into the driveway of the parking lot. When his truck was almost clear of the street, he became aware of plaintiff’s presence by the noise of plaintiff’s brakes and a warning shouted by his co-worker, Dedon. He immediately applied the brakes of the truck and stopped within a few feet of the point of impact.
Walter Dedon, the other occupant of the truck, testified substantially to the same effect as the driver. He stated he first noted plaintiff’s oncoming motorcycle when it was approximately 150 feet away and shouted to Threeton. He testified the motorcycle was skidding or sliding sideways but upright on its wheels, that it continued to slide in this fashion until it reached a point about 20 feet from the truck at which time it passed beyond his range of vision and that he did not see the motorcycle again until after the accident. Dedon stated he did not see the motorcycle at the moment of impact and did not know whether or not it remained upright until the actual collision. He also testified that from the noise made by the motorcycle and his momentary view of plaintiff before the impact, he estimated plaintiff’s speed to be at least 50 miles per hour.
William H. Day, employed by the City-Parish Government as record clerk, testified he keeps the office situated on the parking lot in question. He was looking out of the window of the office building and saw the truck as it entered the driveway. He heard what he described as “an unusual noise” and although he did not see the impact, he saw plaintiff come from behind the truck on his motorcycle after the collision. He immediately ran to plaintiff’s assistance.
The accident was investigated by Mr. E. L. Scruggs, former city policeman, and Sergeant H. A. Deffez of the city police department, Sergeant Deffez being still employed in that same capacity.
Sergeant Deffez, called as a witness for defendant, testified he has had twenty years experience handling motorcycles and for several years has been in charge of instructing new policemen in the use and handling of such machines. Based upon his years of experience in handling motorcycles, his observation of the skid marks made by plaintiff’s machine at the scene of the accident and certain other factors, he estimated plaintiff was traveling at least 50 miles per hour. He conducted a test to determine the stopping distance of a motorcycle and found that a motorcycle traveling 35 miles per hour could be brought to a stop leaving skid marks not more than 15 feet in length. Counsel for plaintiff vigor *830 ously attacks the accuracy of this testimony by showing that according to recognized tables compiled and predicated on controlled experiments, a vehicle traveling at a speed of 35 miles per hour would require a distance considerably in excess of 15 feet in which to stop. In this connction, we wish to point out that the testimony of Sergeant Deffez is not to the effect that he could stop a vehicle traveling 35 miles per hour in a distance of 15 feet but that a test he conducted resulted in a vehicle traveling 35 miles per hour being stopped leaving skid marks only 15 feet in length. We place no particular reliance on the test conducted by this witness because his testimony clearly shows his estimate of plaintiff’s speed is not predicated upon the experiment but upon the skid marks and other physical evidence he observed. Deffez was of the opinion the skid marks were left by the tires of the motorcycle and not its crash bar. He described these marks in some detail and concluded they were made by the tires while the vehicle was skidding but traveling on its wheels.
The evidence shows that as plaintiff ascended the slope of the depression, he was at least partially visible to Threeton while still a distance of 450-500 feet from the point of collision. Plaintiff argues that since the truck driver had an unobstructed view of at least 450 feet and did not see plaintiff until plaintiff was only about 100 feet away, this constitutes proof of negligence. Considering all of the circumstances of this case, we do not agree with plaintiff’s conclusion in this regard.
We believe that at the moment Threeton commenced his turn, plaintiff was still approximately 450-500 feet away at some point on the slope of the depression and not fully visible.
The evidence shows the truck was traveling approximately five miles per hour at the moment of impact. The truck was a bulky and cumbersome vehicle and although the testimony of Threeton does not show the exact position in which he parked the truck, we believe the evidence as a whole preponderates in favor of the conclusion he stopped a few feet east of the driveway. Considering all of the evidence of record, we conclude the truck traveled a minimum of 30 and a maximum of 40 feet from the time it was placed in motion until it was struck. Its average speed in traveling this distance was obviously less than five miles per hour when it is considered it started from a stationary position and attained an optimum speed of five miles per hour. In view of these circumstances, we conclude the truck was in motion for an interval of 7-10 seconds before the impact.
It is shown that plaintiff’s motorcycle left skid marks of 100 feet before the impact and traveled an additional 69 feet following the collision. Plaintiff contends these physical facts are not necessarily indicative of excessive speed because, first, the motorcycle was traveling on loose gravel which reduced his braking power and secondly, his machine was not traveling upright but sliding on its crash bar. The amount of loose gravel on the street was not shown with any degree of certainty although the evidence does show the presence of some gravel on the surface of Shada Avenue. We believe the evidence preponderates in favor of the conclusion that the motorcycle was traveling upright until just before the impact. We further believe the evidence shows the skid marks were made by the tires of the motorcycle and that, if plaintiff did “lay the motor down”, he did so only immediately prior to the actual impact. Predicated upon the evidence as a whole, we find, as did the learned trial judge, plaintiff’s excessive speed was the proximate cause of this unfortunate accident. In this regard, we find that plaintiff was traveling at least fifty miles per hour. At such speed, plaintiff would travel a distance of 450-500 feet during the interval of 7-10 seconds the truck traveled the distance of 30-40 feet it negotiated before being struck.
*831 Plaintiff contends Threeton was negligent in not looking ahead continuously while making his turn. In this connection, we desire to point out that it is physically impossible for a driver making a left turn to simultaneously look in both the direction of oncoming traffic and the direction in which he is turning. As he makes the arc or angle required by his turn, his gaze is necessarily shifted from the direction of approaching traffic toward the direction he wishes to assume. Although we do not mean to imply that a driver who once looks ahead before commencing a left turn is never under an obligation to take a second look, we find that under the circumstances of this case, Threeton was not negligent in failing to look again after once establishing that the road was free of oncoming traffic.
In Bergeron v. Department of Highway, 221 La. 595, 60 So.2d 4, 8, it was held that a motorist making a left turn is not necessarily negligent in failing to maintain a constant lookout in the direction of approaching traffic. The following language appearing in the Bergeron case, supra, is deemed particularly appropriate to the case at bar:
“Assuming, as both courts found, that the driver of the truck was not negligent in any manner when he had stopped or slowed down and surveyed the situation before proceeding to make the turn, his duty then was to concentrate his attention on making the turn and, as stated in Rottman v. Beverly, 183 La. 947, 165 So. 153, supra, and in Jackson v. Cook, 189 La. 860, 181 So. 195, supra, ‘to keep a sharp lookout ahead to discover the presence of those who might be in danger.’ (Italics ours.) He was turning from west to south, and, looking ahead in making the turn, that meant that he had to direct his vision gradually southward and away from the west, the direction from which the bicycle rider was coming. Assuming that even though he might, by a casual glance, have seen the young man at the beginning of his turn, there is nothing to indicate that at that moment, the latter was in peril. In this connection, we are bound to give some consideration to the conduct of the young man who says that he did not see the truck until the very moment he was about to run into it. The rule of ‘the last clear chance’ or ‘discovered peril’ applies to both parties who are involved in an accident. In 38 Am. Jur. Negligence, Sec. 227, that thought is expressed as follows: ‘As graphically stated by some authorities, the doctrine of discovered peril is a two-edged sword, applicable equally to the rights of a defendant and those of a plaintiff.’ Under the facts of the case it was the bicycle rider who had the better opportunity to observe the situation and apprehend the danger before it became imminent. His opportunity came as late, if not later than that of the truck driver, to avoid the accident; he had the last clear chance and is not in a position to invoke its provisions against the defendants.”
The case of Moran v. Lumbermen’s Mutual Casualty Co., La.App., 98 So.2d 530 cited and heavily relied upon by counsel for plaintiff is clearly distinguishable from the present case. In the Moran case, supra, plaintiff, traveling south and attempting a left turn into a private driveway from an open highway, was struck by a northbound motorist traveling at a speed of 60 miles per hour. The facts in the Moran case show that plaintiff had an unobstructed view of 375 feet to the south and observing no oncoming traffic made his turn but was struck before completing same. Such a factual situation is vastly different from the one with which we are presently concerned. In the Moran case, plaintiff knew or should have known that approaching traffic would likely be traveling at the lawful speed of 60 miles per hour permitted on the open highway. In the instant case, *832 Threeton had a right to assume approaching traffic would not be traveling in excess of the legal limit of 25 miles per hour.
We believe the present case is controlled by the ruling in Massicot v. Nolan, La.App., 65 So.2d 648, 653, which involved a collision between defendant’s westbound automobile and plaintiff’s eastbound motorcycle in the City of Lafayette, Louisiana. In the Massicot case, defendant was attempting a left turn into her driveway from a street on which a 25 mile per hour speed limit was in effect. Defendant observed plaintiff some 250-300 feet away and believing she could safely make the turn, gave the proper hand signal and turned left. When defendant had almost completed her turn, plaintiff’s motorcycle collided with the right rear wheel of defendant’s automobile approximately 2^-3 feet from the south curb of the street. In the Massicot case, the court found as a fact plaintiff’s motorcycle was 250-300 feet away when defendant signalled her intention to turn left and was still approximately 130-150 feet away when defendant actually began to turn. The following language appearing in the Massicot case, supra, is considered to be in point:
“It is well settled in our jurisprudence that a left hand turn is a dangerous maneuver. Such a maneuver is even more dangerous when made on a highly travelled street or highway, especially if such maneuver is made in the center of a block, where it would be less expected than at an intersection. Therefore, it goes without saying that Mrs. Nolan, in turning left into her driveway, was executing an extremely delicate and dangerous maneuver. In making a left turn, the driver of the vehicle must see that the way is dear of oncoming traffic so as not to endanger the lives and property of others in such maneuver. However, the party making the turn is not an absolute insurer of the property of others.”
“In Capone v. Cotton Trade Warehouses, 215 La. 692, 41 So.2d 505, the Supreme Court held that the driver of a vehicle making a left turn when another vehicle is approaching at a distance of 125 to 150 feet was not guilty of any negligence, but that the sole and proximate cause of the accident was the negligence of the driver of the other vehicle.
“In the case of Kelly v. Neff, 14 So. 2d 657, 660, originating from the Second Circuit, Court of Appeal, the court pointed out that a driver turning left has to be reasonable, but so does the other operator. In that case, the plaintiff, operator of a truck, sued the operator of a vehicle which ran into the truck as it was turning left. The court in permitting recovery to the driver turning left, said:
“ ‘Appellants’ astute counsel stress the well recognized danger attending the execution of a left turn by a motorist and cite and quote from many cases dealing with this question, with all of which we are in perfect harmony. Several of the cited cases are from this court. But, it is also well recognized that a motorist who desires to make a left turn on a city street is not required by law to wait until there is no traffic in sight before attempting to do so. He -has the unquestioned right to move after he has made a close and careful survey of traffic conditions about him and honestly believes from such survey that conditions warrant such action; in doing so, relying upon the presumption that other motorists in sight are observing and will continue to observe speed limitations. When the motorist acts in such circumstances and a colli-' sion occurs because of the excessive speed of the other fellow, the obvious and proximate cause of the accident is the excessive speed. If plaintiff had not the right to undertake the left turn as and when he did, it is improbable he *833 could have done so within a reasonable time because of the usual heavy traffic on the street.’
“It is the opinion of this court that, at the time Mrs. Nolan gave signal of her intention to execute a left turn, the motorcycle was in the next block, a distance of some 250 or 300 feet from the Nolan car. We further believe that the motorcycle was some 130 to 150 feet distant when she actually started the turn. The evidence indicates that petitioner was travelling at a speed of some 35 miles per hour or faster, in excess of the speed laws of the City of Lafayette. The evidence further indicates that the collision took place approximately three feet from the south curb of College Avenue, and that defendant’s car had almost completed its maneuver. We further believe that Mrs. Nolan was reasonable in her belief that she could safely make the turn into her driveway. The evidence fails to prove by a preponderance thereof, that Mrs. Nolan was guilty of negligence.”
Conceding, as plaintiff contends, Three-ton saw or should have seen plaintiff before the collision, the evidence clearly shows the nearest point at which plaintiff was fully visible was approximately 450 feet distant. As held in the Massicot case, supra, Threeton was entitled to assume plaintiff was traveling at the lawful speed of 25 miles per hour. Under such circumstances, Threeton would not have been negligent had he actually seen plaintiff ascending the rise at the time he started to turn.
 Although a left turn is admittedly one of the most dangerous maneuvers that can be attempted by a motorist, it does not constitute negligence per se, negligence being a question of fact to be determined in the light of all the circumstances of a given case. In this connection, we quote with approval the following language found in Paggett v. Travelers Indemnity Co., La. App., 99 So.2d 173, 176:
“(2) The general principle, as enunciated and emphasized in the cases cited, that a left-hand turn is a most dangerous operation and is not to be undertaken until a driver ascertains that it can be performed in safety, is now so well established and so firmly imbedded in our jurisprudence as to admit neither question nor argument. But it must be borne in mind that every general rule is subject either to exception or to modification in the light of the facts of a particular case. We very much fear that our courts may have been guilty of some over-emphasis in the establishment and reiteration of this rule, which has resulted in the assumption that the driver of a vehicle who undertakes a left-hand turn is guilty of negligence, per se, in the event an accident occurs. Certainly, this result was never intended.”
The doctrine of last clear chance relied upon by plaintiff is not applicable to the facts and circumstances of this case. The rule of last clear chance presupposes a situation in which one of the parties to an accident fails to avail himself of some protective measure which a reasonable person would have performed to avoid injuring another. Rottman v. Beverly, 183 La. 947, 165 So. 153. Under the doctrine of last clear chance, a negligent defendant is held liable to a negligent plaintiff only when defendant was aware of plaintiff’s peril or when, by the exercise of reasonable care, he should have been aware thereof and, by exercising reasonable care, could have prevented the accident despite plaintiff’s negligence. Prine v. Continental Southern Lines, 'Inc., La.App., 71 So .2d 716.
We find as a matter of fact that had Threeton actually seen plaintiff as plaintiff came over the crest of the hill approximately 450 feet away, he would have had no reason to anticipate his intended maneuver would imperil plaintiff. It was reasonable for him to assume he had ample time to com- *834 píete his turn without becoming involved in an accident and, under the circumstances, he cannot be charged with knowledge that a collision was imminent. Once Threeton observed that the road ahead was clear of oncoming traffic as far as he could see and committed the heavy vehicle to the turn, there was very little if anything he could have done to avoid being struck by an oncoming motorist traveling at an excessive rate of speed and suddenly materializing on the highway ahead as though from nowhere.
For the reasons assigned, the judgment of the lower court rejecting plaintiff’s demand is affirmed.
Affirmed.