YARRUT, Judge.
Defendants appeal from an adverse judgment awarding Plaintiff $10,459.46, interest, etc., damages for personal injuries sustained at an intersectional collision between a Ford pick-up truck he was driving, and a Ford station wagon Defendant-Sledge was driving, on November 3, 1957, at about 10:00 A.M., at the intersection of U. S. Highway 90 and Bayou Gauche Road, in St. Charles Parish. The weather was clear and the road dry.
Plaintiff alleged that, on the date of the accident, he was driving a pick-up truck on Bayou Gauche Road and, when he came to the intersection of that road and U. S, Highway 90, he came to a full stop off the Highway; that Defendant-Sledge, approaching from his left at an excessive rate of speed, drove his station wagon off the highway onto the shoulder, striking Plaintiff’s pick-up truck, knocked it into a nearby canal, and caused him serious personal injuries.
Defendants’ answer denies any negligence whatsoever on the part of Defendant-Sledge, contending that the collision occurred on Highway 90 proper, that Defendant-Sledge had the right-of-way, and that the collision was caused exclusively by the negligence of Plaintiff, in suddenly pulling onto Highway 90 from a position of safety on the inferior connecting Bayou Gauche Road, at a time when it was unsafe to do so; that Plaintiff failed to maintain a proper lookout, keep his vehicle under proper control, failed to yield the right-of-way to traffic on Highway 90, until it was safe to enter Highway 90.
In the alternative, contributory negligence on the part of Plaintiff was pleaded, *782 his contributory ' negligence consisting of the acts and omissions set out in the preceding paragraph.
In his reasons for judgment the district judge concluded that all the witnesses to the accident, including the State Trooper who investigated it, established the following facts with legal certainty:
1. The so-called intersection is actually a black-topped triangle lying east of Highway 90, with its base extending along the east side of Highway 90, and to the north and south of the Bayou Gauche Road, for a quarter mile in each direction, and the tip of the triangle goes into the mouth of the Bayou Gauche Road.
2. A white line extends along the base of this triangle and marks the eastern edge of the Highway 90 traffic lanes.
3. Defendant was travelling at a high rate of speed on Highway 90 in a northerly direction and had a clear view of Plaintiff at least 600 feet before the accident. '
4. Plaintiff had stopped immediately east of the Highway 90 traffic lane for at least one minute before the accident.
5. The collision occurred in the very near proximity of the white line marking the eastern edge, of Highway 90 traffic lanes.
Predicated on these findings, the judge made the following conclusions of fact and law with respect to the question of liability :
“Plaintiff was either stopped at the edge of U. S. 90 traffic lane or had barely encroached upon the eastern edge of the traffic lane. His negligence, if any, is negated by the fact that his stopped or slow-moving vehicle was in such a position that plaintiff could do nothing to avoid the impending collision. Defendant, on the other hand, travelling at a high rate of speed, with clear view of plaintiff from a long-distance before the collision, and full width of a traffic lane to pass around plaintiff, made no effort to avoid the collision and he so testified. The proximate cause of the accident was the negligence of defendant. Paternostro v. Hartmann, [La.App.] 67 So.2d 497; Garrett v. Toye Bros.'Yellow Cab Co., [La.App.] 58 So.2d 418; Catalano v. Pritchard, [19 La.App. 262] 140 So. 100.”
We observe immediately that the trial judge predicated his judgment for Plaintiff on the doctrine of the last clear chance, or discovered peril. At the outset, there is no dispute that Highway 90 was a right-of-way thoroughfare, and that Bayou Gauche Road was the inferior roadway, controlled by a “stop” sign at the intersection.
The only eye witnesses to the accident were Plaintiff and Defendant-Sledge, as the drivers of the respective vehicles; Marshall Robinson, for Plaintiff, and Harry Levy, for Defendants, as non-occupant eye witnesses.
Plaintiff, after the accident, gave two written statements; one dated November 25, 1957 (two weeks after the accident) at. Boutte, La., witnessed by one R. Patin; and another dated August 27, 1958, at Hahnville, La., witnessed by his son, Earl J. Keller, Jr., and W. J. McAnelly. In both statements, and on the witness stand, Plaintiff was confused, indefinite and con-' tradictory. He was not sure whether he made or had signed, the statements, or that the facts were clear in his mind on both dates. His doctor testified that he could have been suffering from amnesia. Preter-mitting any discussion of Plaintiff’s primary interest, which might have affected his testimony, we promptly dismiss his testimony regarding the events immediately preceding the collision, because of its confusion and contradictions.
The other eye witness for Plaintiff, Marshall Robinson, who knew Plaintiff and had done business with him, testified that he was on Bayou Gauche Road north of Highway *783 90, or on the opposite side of the road, about 300 feet from the intersection, and saw Plaintiff stopped at the intersection; and observed Defendant coming down the Highway at 70 miles an hour, and crash into Plaintiff. He went to the scene, saw and recognized his injured friend, Plaintiff, but when the doctors and others arrived he decided it was a “white fellows’ affair” and left. From the date of the accident until three weeks before the trial (held two and a half years later), he did not make known to anybody that he had seen the accident. We will not question the good faith of this colored man, except to say that from his position across Highway 90, and because of the continuous stream of traffic on the Highway, almost up until the time of the collision, his vision had to be obscured or screened. Hence, we cannot give too much credence to his testimony; particularly in view of the testimony of the witness Levy, who was stopped only five feet behind Plaintiff, as explained later.
For the Defendants, the two eye witnesses were Defendant-Sledge and Harry Levy. Mr. Sledge testified he was travel-ling about 55 or 60 miles an hour, saw Plaintiff’s car stop at the intersection to permit traffic on the Highway to go> by and, believing that Plaintiff would remain there, he continued on until Plaintiff suddenly entered the Highway when he (Sledge) reached Bayou Gauche Road.
Mr. Levy, a travelling salesman for a New Orleans concern, testified that he was travelling on Bayou Gauche Road, returning from a duck hunt, with his son, just as Plaintiff was returning from a duck hunt; that he followed behind Plaintiff and when Plaintiff stopped at Highway 90, to let traffic go by, he stopped five feet behind him; that most of the traffic was coming from their right and some from the left. He noticed that Plaintiff was principally observing traffic from their right and was paying little or no attention to the traffic from their left, from which direction Sledge was approaching. Mr. Levy sensed that Plaintiff might pull onto the Highway once the west-bound traffic ceased, oblivious of the east-bound Sledge vehicle to his left, rapidly approaching the intersection, and felt sure Plaintiff would see the Sledge station wagon approaching, just as he had, and let it pass; he thought of blowing his horn to warn Plaintiff but refrained doing so, thinking it would make Plaintiff nervous and only result in his premature entry upon the Highway, as he ultimately did; that Plaintiff had already entered the Highway at the time he was hit. Levy testified Sledge was travelling at a rather high speed.
The only impartial witness at the scene, in better position to observe what was going on, was Mr. Levy. His testimony in no manner was discredited. He had no interest in the case, knew none of the parties, and was returning from a hunt with his son, who was sound asleep all the time. The son made no attempt to testify as to the events leading up to the collision.
Plaintiff’s main contention is that he had not entered the Flighway at the time of the collision, and that Sledge’s station wagon •came off the Highway and crashed into him while he was immobile off the Highway on Bayou Gauche Road. Both Defendant-Sledge and Mr. Levy testified to the contrary, and were corroborated by the State Trooper, who testified that the debris shaken loose from the respective vehicles was deposited on Highway 90, north of a white line, referred to in the findings of fact by the district court.
It is clear from the testimony that Plaintiff entered the Highway, in the path of the oncoming Sledge station wagon without looking. Plaintiff’s primary contention that the Sledge vehicle ran into his pick-up truck while it was stationary off the Highway, has been completely refuted. We find no doubt that the accident happened just when Plaintiff entered the Highway in front of the Sledge car, without looking and just as Mr. Levy feared.
Our jurisprudence is too clear to require citation, that one who enters a fa *784 vored highway from an unfavored roadway, controlled by a stop sign, does not preempt the intersection simply by entering it. He only preempts the intersection if he can do so safely and proceed without danger to himself or to those motorists travelling on the favored Highway. The mere fact that a motorist travels at an excessive speed is not necessarily the proximate cause of an accident. Wood v. Manufacturers Casualty Ins. Co., La.App., 107 So.2d 309; Cone v. Smith, La.App., 76 So.2d 46; Shipp v. Ferguson, La.App., 61 So.2d 531; Vines v. Hartford Accident & Indemnity Co., La. App., 36 So.2d 729; Crasser v. Cunningham, La.App., 200 So. 658; Rodriguez v. Albright, La.App., 70 So.2d 412; Thibodaux v. Willet, La.App., 70 So.2d 728; Webb v. Providence Washington Ins. Co., La.App., 72 So.2d 883; Chase v. Burley, La.App., 76 So.2d 587.
Having concluded that Plaintiff was guilty of negligence in entering the Highway into the path of the oncoming Sledge vehicle, which had the right-of-way, the next question is whether or not Sledge could and should have discovered the peril of Plaintiff and avoided the accident. Since we conclude that Plaintiff’s vehicle entered the Highway when the Sledge vehicle was nearing the intersection, the Sledge car could not have discovered Plaintiff’s peril in time to avoid the accident. The emergency was created by Plaintiff and not by Sledge, and was created much too late for Sledge to have avoided it. Carlson v. Fidelity Mutual Ins. Co., La.App., 88 So.2d 461; Short v. City of Baton Rouge, La. App., 110 So.2d 825; Federal Ins. Co. v. Lepine, La.App., 55 So.2d 83; Russell-Miller Milling Co. v. Landry, La.App., 59 So.2d 217.
For the reasons assigned, the judgment of the district court is reversed; and there is judgment in favor of Defendants, Truett Sledge and New Amsterdam Casualty Company, and against Plaintiff, Earl J. Keller, dismissing Plaintiff’s suit at his cost.
Judgment reversed and rendered.