GLADNEY, Judge.
This action in tort arises out of an automobile collision which occurred near Winn-held, Louisiana. Judgment was rendered .awarding damages to plaintiffs, the Court ■rejecting the defenses predicated on the absence of fault and alternative pleas of ■contributory negligence. Defendants have .appealed and plaintiffs have answered the .appeal asking for an increase in damages.
In his stated reasons for judgment the -trial judge has comprehensively and accurately stated the material facts and expressed his reasons for holding that the proximate cause of the accident was solely •due to the negligence of the truck driver, IBilly Joe Jones. Accordingly, we quote from the opinion:
“This is a suit by A. A. McQuillin and his wife, Mrs. Nena Machem McQuillin, for damages and personal injuries as the result of an automobile accident which occurred on December 10, 1962, between the family automobile of plaintiffs, driven by Mrs. McQuillin, and a pulpwood truck owned by defendant D. E. Lewis, insured by Travelers Indemnity Company and driven by one Billy Joe Jones.
“The accident occurred at approximately 4:00 o’clock P.M. Visibility was good and the road was dry. Mrs. McQuillin was driving south on what is locally known as the Frazier road which intersects with Louisiana Highway 156, approximately 5 miles northeast of Winnfield. The Frazier road is a dirt road which runs north and south and Louisiana Highway 156 is a blacktop road with an asphalt surface 21 feet in width and shoulders extending 3 feet on each side of the asphalt surface. This highway runs in an east and west direction. The pulpwood truck was loaded with three cords of pulpwood and was traveling east at the time of the accident. Mrs. McQuillin approached the intersection, crossed into the east bound lane of travel and the pulpwood truck hit her 1954 Chevrolet automobile squarely in the rear. The vehicles locked together and traveled 187 feet after the point of impact ending up in the ditch on the right-hand side of the road with the truck on top of the car. The point of impact was 21 feet east of the center line of intersection of the Frazier road with Louisiana Highway 156.
“Trooper Marlin Conner arrived at the scene of the accident within 10 or 15 minutes and before the vehicles had been moved. He testified that the pulpwood truck skidded 57 feet before the point of impact, that the point of impact was 21 feet east of the intersection, that the car was hit directly in the rear, the left front wheel of- the truck was 14 inches north of the center line of the highway and that both vehicles locked together and traveled ■187 feet after the point of impact. Trooper Connor further testified that there was a stop sign and a fence corner at the northwest corner of the intersection of these two roads and that the corner of the fence (the point at which the plaintiffs’ car would be fully visible to anyone on the highway) was 39 feet from the edge of the blacktop. The pictures reveal that to the east of this intersection there was a flat and unobstructed view for at least one-half mile but to the west there was a slight hill and that *694 from the center of the intersection to the crest of the hill it was 697 feet.
“Mrs. McQuillin, the driver of plaintiffs’ automobile, testified that she lived less than a quarter of a mile from this intersection, that she was at that time employed as a housekeeper and nurse for an elderly couple who lived on the Frazier road. At the time of the accident she was returning from work to her home and she testified that she pulled up to the edge of the road, stopped and, in her own words ‘put my car in low and I looked to the west, which was up the hill there and then to the east and there was no traffic and I pulled up on the road and as I was getting about half way on the blacktop, I glanced again at that hill and I saw the pulpwood truck coming over the hill and I pulled on over into my lane and put the car in second gear and that’s the last I remember.’
“She testified that she had no opinion as to how fast the truck was going and repeatedly stated that the first time she looked to the west, she could see no traffic but that as she was in the process of pulling out into the highway, she saw the pulpwood truck coming over the hill.
“The driver of the pulpwood truck was Billy Joe Jones, a negro male 23 years of age. Billy Joe testified that he was making between 35 and 45 miles per hour at the time but admitted that he had not looked at his speedometer and was only estimating his speed. He stated that he first saw Mrs. McQuillin’s car on the Frazier road when he was about half-way down the hill but that when she came out on the road he was right on top of her and hit her before she had completed making her turn into the east bound lane of traffic. Defendant’s counsel in brief makes the comment that Billy Joe Jones ‘was either too stupid or too scared to testify.’ Billy Joe repeatedly contradicted himself and refused to make any positive estimates of speeds or distances. A passenger in the pulpwood truck, James Caesar, likewise testified that they saw the McQuillin car when they were about half-way down the hill but his testimony, like that of Jones,, was evasive and completely unconvincing.
“The true speed of the pulpwood truck can probably best be determined by the-testimony of Mrs. Nola Garrett, a neighbor who lives three-quarters of a mile west of the intersection on Highway 156. Mrs. Garrett is not related to any of the parties- and was a disinterested witness. She testified that she was in her yard hanging out clothes at the time the pulpwood truck passed and that it attracted her attention because of its speed. She testified that the pulpwood truck was traveling at least 60 to 65 miles per hour and her thought at the moment was T just thought to myself, well, he will kill himself before he gets to where he is going.’ She later went to the scene of the accident and identified the truck as the one which she saw pass-her home traveling very fast.
“The testimony of James Caesar, a passenger in the pulpwood truck further reveals that at the time of the accident Jones was in a hurry to get to the pulpwood yard to unload before dark.
“Considering the evasiveness and contradictory statements made by Billy Joe Jones and his passenger, James Caesar, the Court rejects their testimony as completely untrustworthy. A review of the testimony convinces the Court that Jones was traveling at a very excessive rate of speed and in a hurry to get to the pulpwood yard before it closed. Although they admitted that they saw the plaintiff when they were about half down the hill or more than 300 feet away from her car, they made no immediate effort to avoid or prevent an accident. The Court accepts the testimony of Mrs. Garrett and finds that Jones was traveling at a rate of speed at least 60 to 65 miles per hour at the time of the accident, 10 to 15 miles per hour in excess of the speed limit for freight carrying vehicles established by LSA-R.S. 32:62.
*695 "In the case of Jones v. Travelers Insurance Company, [La.App.] 149 So.2d 441, the Court stated the law thusly:
“ ‘The primary duty of avoiding' a collision rests upon the driver of a vehicle entering a public highway from a private driveway, such a driver being required to keep a lookout for vehicles upon the highway and to not enter the highway until it becomes apparent to him, or until it should become apparent to a reasonably prudent person, that he can do so safely. Holland v. United States Fidelity & Guaranty Company, La.App. (2nd Cir.) 131 So.2d 574; Vidrine v. Simoneaux, La.App. (3rd Cir.) 145 So.2d 400; Chandler v. Grain Dealers Mutual Insurance Company, La.App. (2nd Cir.), 131 So.2d 606. The motorist intending to enter a main highway from a private driveway, however, is not required to desist from making his entry as long as any traffic .is in sight, but his duty is only to retrain from doing so until it should appear to a reasonably prudent person -that the entry can be made in safety .and without obstructing the passage of traffic from either side. Higginbotham v. Frazier, La.App. (1st Cir.) 92 So.2d 89 (Cert. denied).’
“In Easter v. Davis, [La.App.] 153 So.2d 463, the Court held that a driver entering a favored highway owes a duty to yield the right of way to vehicles approaching in -close proximity but that such a driver has the right to assume that the driver of an approaching car would obey the speed limit. The Court further stated:
“ ‘We do not believe that it is possible for a motorist in a quick glance to judge the speed of a car coming toward him from a block away, and the motorist is not required to keep it in view -until he can determine its speed by contrasting its movement with stationary ■ objects along the street. He has a right to assume that it is approaching in a legal manner.’ •
“In the present case, Mrs. McQuillin has testified that she pulled up to the edge of the road, stopped, looked first to the west and then to the east and started pulling out. As she pulled up on the road, she saw the pulpwood truck coming over the hill for the first time. The Court feels that Mrs. McQuillin is telling the true version of how the accident happened and finds that she did bring her car to a stop and looked carefully in both directions before attempting to enter the highway.
“Using the tables found in Blashfield’s Encyclopedia of Automobile Law and Practice, Volume 9-C, Section 6237, the Court finds that at a speed of 10 miles per hour, Mrs. McQuillin would have traveled 14.5 feet per second. Assuming that she came from a point near the fence corner to the edge of the road, then across the center, then 21 feet in an easterly direction plus an additional 18 feet to the front of her car, would be a distance of 80.5 feet. At an average speed of 10 miles per hour, it would require Mrs. McQuillin approximately 5.5 seconds to travel 80 feet. Actually the Court feels that the elapsed time would be more than this because her car probably did not travel at an average speed of 10 miles per hour.
“Using the same tables, we find that a vehicle traveling at the rate of 60 miles per hour, travels 88 feet per second. At this speed, the elapsed time in which a vehicle would travel from the crest of the hill to the point of impact would be less than 8 seconds and,-of course, if the vehicle were going faster than this, the elapsed time would be decreased proportionately.
“Applying the law hereinabove quoted, Mrs. McQuillin stopped and looked. She did not see the pulpwood truck and it would appear to a reasonable prudent person that she had ample time to enter and cross the highway without obstructing any traffic. As stated in the Easter case, supra, she had a. right to assume, even after first seeing the pulpwood truck while in the process of entering the road, that he would obey *696 the speed limit. Certainly she was under no legal responsibility to anticipate the fast rate of speed at which he was traveling.
“The Court feels, therefore, that the proximate cause of this accident was the negligence of the pulpwood truck driven by Billy Joe Jones in operating his vehicle at an excessive rate of speed under the circumstances, in violating the speed law with a heavily loaded freight carrying vehicle, in not keeping his vehicle under proper control, in failing to keep a proper look-out on the road ahead of him and in driving into the rear end of the McQuillin automobile which was in its proper lane of traffic.
“Defendants charged Mrs. McQuillin with contributory negligence. As stated herein, the Court feels that Mrs. McQuillin stopped, looked but did not see the pulpwood truck because it had not come into her vision. Not seeing a truck within a distance of 695 feet, she properly assumed that she had ample opportunity to enter the highway without impeding traffic. Therefore, she is not guilty of any act of negligence.”
We are in accord with the court’s finding that the truck was traveling at a speed in excess of the rate of 50 miles per hour as prescribed for such a vehicle under LSA-R.S. 32:62. However, we do not agree that such negligence on the part of the truck driver was the sole proximate cause of the accident. Upon consideration of all the facts and circumstances arising from the entry of Mrs. McQuillin into the intersection and the course of her vehicle up to the point of impact, we have concluded that she was at fault and that her negligence also was a proximate cause of the collision.
At the risk of appearing repetitious, we refer to Mrs. McQuillin’s testimony wherein she said; “* * * I pulled up on the road and as I was getting about half-way on the blacktop, I glanced again at that hill and I saw the pulpwood truck coming over the hill and I pulled on over into my lane and put the car in second gear and that’s: the last I remember.” As disclosed by Mrs. McQuillin’s testimony, from the time when, she observed the truck coming over the hill from the edge of the blacktop she traveled across the 21 foot strip of blacktop paving, turned her car towards the east and had traveled 16 feet when her vehicle was struck by the truck. The total distance so traveled hardly could have been more than 60 feet.. It was estimated by the trial judge that Mrs. McQuillin maintained an average-speed of 10 miles per hour and traveled the aforesaid distance at the rate of 14.5 feet per second. The judge calculated the distance traveled as being 80.5-feet, but we think he erred by including therein some 30 odd feet from a point-near the fence corner near the edge of the road. Even assuming that the truck was traveling at six times the rate of speed:, of the automobile, or approximately 60 miles-per hour, the truck could not have been more than 300 to 400 feet distant when. Mrs. McQuillin first observed its approach, from the edge of the blacktop.
The testimony of Mrs. McQuillin is inconsistent with the physical facts and other-circumstances established in the record. It. clearly appears that Mrs. McQuillin attempted to enter the superior thoroughfare-without exercising prudence and care and,, therefore, was guilty of negligence which», contributed to and was a proximate cause-of the accident. Whether the fault was due-to her failure to make proper observation», or whether due to misjudgment is immaterial for she should have respected the right-of-way of the truck driver, and remained im her place of safety:
“Our jurisprudence is too clear to require citation, that one who enters a favored highway from an unfavored roadway, controlled by a stop sign,, does not preempt the intersection simply by entering it. He only preempts the-intersection if he can do so safely and-proceed without danger to himself or to those motorists travelling on the: *697 ■favored Highway. The mere fact that •a motorist travels at an excessive speed ■is not necessarily the proximate cause ■of an accident. Wood v. Manufacturers Casualty Ins. Co., La.App., 107 So. 2d 309; Cone v. Smith, La.App., 76 So. .2d 46; Shipp v. Ferguson, La.App., 61 So.2d 531; Vines v. Hartford Accident & Indemnity Co., La.App., 36 So.2d 729; Grasser v. Cunningham, La.App., 200 So. 658; Rodriguez v. Albright, La.App., 70 So.2d 412; Thibodaux v. Willet, La.App., 70 So.2d 728; Webb v. Providence Washington Ins. Co., La.App., 72 So.2d 883; Chase v. Burley, La.App., 76 So.2d 587.” [Keller v. Sledge, La.App., 136 So.2d 780, 783, 784]
For the reasons stated the judgment from -which appealed is annulled and set aside and -the plaintiffs’ demands are rejected at their •costs.
HARDY, J., dissents.